896 F.2d 228
 58 USLW 2556, 15 Fed.R.Serv.3d 1137,
12 Employee Benefits Ca 1001
 Delvina E. LORENZEN, Plaintiff-Appellee, Cross-Appellant,
v.
EMPLOYEES RETIREMENT PLAN OF THE SPERRY AND HUTCHINSON
COMPANY, INC., a/k/a Employees Retirement Plan of
the S & H Group, Inc.; and S & H Group,
Inc., Defendants-Appellants,
Cross-Appellees.
 Nos. 89-1549, 89-1585.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 27, 1989.
Decided Feb. 15, 1990.
Rehearing and Rehearing En Banc Denied April 10, 1990.
 
 Kathryn Sawyer Gutenkunst (argued), James W. Hammes, Cramer, Multhauf & Hammes, Waukesha, Wis., for plaintiff-appellee, cross-appellant.
 Paul E. Prentiss (argued), Michael, Best & Friedrich, Milwaukee, Wis., for defendants-appellants, cross-appellees.
 Before CUDAHY and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 POSNER, Circuit Judge.
 
 
 1
 This is a suit under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001 et seq., by the widow of an employee of S & H, claiming that S & H's Retirement Plan, an ERISA plan, violated its fiduciary duties to her husband and herself, causing a loss of retirement benefits. The district judge granted summary judgment for Mrs. Lorenzen, awarding her some $192,000, 699 F.Supp. 1367 (E.D.Wis. 1988), and the plan appeals. Mrs. Lorenzen cross-appeals, seeking prejudgment interest.
 
 
 2
 The complaint named the employer, which is the administrator of the retirement plan, as a defendant along with the plan itself. This was a natural move: several cases, illustrated by Leigh v. Engle, 727 F.2d 113, 133-35 (7th Cir.1984); Thornton v. Evans, 692 F.2d 1064, 1077 (7th Cir.1982), and Gelardi v. Pertec Computer Corp., 761 F.2d 1323 (9th Cir.1985) (per curiam), hold that a fiduciary who violates his fiduciary duties is liable to a plan participant or beneficiary; and we may assume that, as the plan administrator, the employer in this case was a fiduciary. The cases are, however, a little puzzling. Either they base liability on sections of ERISA that make the fiduciary liable to co-fiduciaries and to the plan, respectively, rather than to participants or beneficiaries, 29 U.S.C. Secs. 1105, 1109; Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985), or they do not indicate what section imposes liability on fiduciaries to participants or beneficiaries. Nor is it obvious what section, if any, does. One possibility, however, is section 1132(a)(3)(B), which among other things authorizes a civil action by a participant or beneficiary to obtain "appropriate equitable relief" against a violation of the terms of an ERISA plan; as the concurring Justices in Massachusetts Mutual Life Ins. Co. pointed out, equitable relief, in a case involving a breach of fiduciary obligations, can include a monetary payment, such as Mrs. Lorenzen sought in this case. 473 U.S. at 154 n. 10, 105 S.Ct. at 3090 n. 10. And Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), by holding that ERISA preempts suits under state tort law against employer-fiduciaries by ERISA plan participants for improper processing of claims, strongly implies that such suits can be brought under ERISA; for otherwise there would be a big gap in liability for misconduct by ERISA fiduciaries. So there may well be employer liability in a case like this under ERISA, but this we need not decide. Mrs. Lorenzen neither discusses the basis of that liability nor argues that the employer is liable to her even if the plan is not.
 
 
 3
 A threshold question that we cannot duck is appellate jurisdiction. The judgment for Mrs. Lorenzen was entered on November 29, 1988. The plan lost no time in filing its notice of appeal; it filed it on December 6, well within the thirty days allowed by Fed.R.App.P. 4(a)(1). On December 9, the tenth day after entry of the judgment, Mrs. Lorenzen filed a motion in the district court captioned a Rule 59 motion. As amplified in an accompanying affidavit, the motion sought an award of costs and of attorney's fees, an order that the award would accrue postjudgment interest, and an award of prejudgment interest. By order of January 24, 1989, the district judge awarded costs and attorney's fees, ignored the request (superfluous in light of 28 U.S.C. Sec. 1961) for postjudgment interest, and denied the request for prejudgment interest. The plan concedes the propriety of awarding costs and attorney's fees should we uphold the district judge's decision. 29 U.S.C. Sec. 1132(g)(1).
 
 
 4
 Mrs. Lorenzen's counsel waited until the thirty days that the plan had in which to file a notice of appeal from the order of January 24 had passed, then moved this court to dismiss the appeal. On March 3, the thirty-seventh day after January 24, the plan asked the district judge for an extension of time in which to file a notice of appeal. The judge granted an extension to March 8 and the notice was filed that day.
 
 
 5
 Rule 4(a)(4) of the Federal Rules of Appellate Procedure provides, so far as relates to this case, that if a timely motion under Rule 59(e)--that is, a motion to alter or amend the judgment--is filed, any notice of appeal filed previously "shall have no effect." In light of this provision, appellants are well advised not to emulate the plan's counsel and file their notice of appeal before the expiration of the nonextendable ten-day deadline for filing Rule 59(e) motions as well as for filing motions under Rules 50(b), 52(b), and 59(b)--motions that have the same effect, on a notice of appeal filed previously, that a motion under Rule 59(e) has. Counsel should wait until the ten days have passed before filing the notice of appeal, so that the notice will be indefeasible.
 
 
 6
 But that is water under the bridge; given Rule 4(a)(4), if the motion that Mrs. Lorenzen's counsel filed on December 9, 1988, was a proper Rule 59(e) motion, it wiped out the notice of appeal that the plan had filed three days earlier. Was it a proper Rule 59(e) motion? Insofar as it sought costs and attorney's fees, it was not; it was instead a collateral proceeding that did not affect the time for appealing from the judgment of November 29. White v. New Hampshire Dept. of Employment Security, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); Buchanan v. Stanships, Inc., 485 U.S. 265, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988) (per curiam). But insofar as it sought an award of prejudgment interest it was a proper Rule 59(e) motion. Osterneck v. Ernst & Whinney, --- U.S. ----, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). In this circuit, all motions addressed to the judgment that are filed within ten days of the entry of judgment, except purely procedural motions, such as for extensions of time, and motions that kick off collateral proceedings such as a proceeding to obtain an award of costs or attorney's fees, are deemed to be Rule 59(e) motions. Charles v. Daley, 799 F.2d 343, 347 (7th Cir.1986). And Osterneck holds expressly that, whether or not Rule 59(e) sweeps quite that broadly, it does encompass motions for prejudgment interest. They are equivalent to motions to alter the amount of damages awarded in the judgment, and so fit comfortably within the language and purpose of the rule.
 
 
 7
 Rule 4(a)(5), however, provides that "the district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by" Rule 4(a)(1). In other words, the district court may permit the filing of an untimely notice of appeal, provided permission is requested no more than thirty days after the deadline--a condition fulfilled here. We must consider therefore whether the plan showed "excusable neglect"--not "good cause," for we agree with Mrs. Lorenzen that the reference to "good cause" is limited to requests for extensions filed within the time for filing the appeal. Parke-Chapley Construction Co. v. Cherrington, 865 F.2d 907, 909-10 (7th Cir.1989); Redfield v. Continental Casualty Corp., 818 F.2d 596, 601 (7th Cir.1987); 650 Park Ave. Corp. v. McRae, 836 F.2d 764, 766 (2d Cir.1988); Consolidated Freightways Corp. v. Larson, 827 F.2d 916, 918 n. 3 (3d Cir.1987); Oregon v. Champion Int'l Group, 680 F.2d 1300 (9th Cir.1982) (per curiam); contra, Scarpa v. Murphy, 782 F.2d 300 (1st Cir.1986). The draftsmen of the 1979 amendment which added this language to Rule 4(a)(5) thought it odd to describe as "neglect" a request for an extension of time made before the deadline for filing the notice of appeal had passed, for as yet no neglect had occurred. Note of Advisory Committee to 1979 Amendment, Subdivision (a)(5). This is semantic punctilio, perhaps ill-advised; it gave rise to a dictum in Redfield, 818 F.2d at 601, promoted to a holding in Parke-Chapley Construction Co. v. Cherrington, supra, 865 F.2d at 909-11, that "excusable neglect" is a more demanding standard than "good cause," though how much more is uncertain. Id. at 909 n. 5. Oregon v. Champion Int'l Group, supra, agrees that it is more demanding. Scarpa disagrees.
 
 
 8
 As an original matter we might think it so much hairsplitting to try to distinguish excusable neglect from good cause, or even that, if the hairs must be split, excusable neglect connotes a laxer standard than good cause. "Excusable" is not as meritorious as "good" (compare the distinction in criminal law between justifiable and excusable homicide), or "neglect" as "cause." But it is too soon to reexamine Cherrington, especially when its position is that of a majority of the circuits to have ruled on the question. And in defense of that position we point out that when the time for taking an appeal has passed without a peep from the losing party, the winner's interest in finality and repose is greater than if within that time a document is filed indicating that the loser wants to appeal.
 
 
 9
 An observation fully consistent with Redfield and Cherrington, however, is that the standards of excusable neglect and of good cause will rarely if ever have to be compared, because they have different domains. If the appellant's lawyer discovers within the initial thirty days that he won't be able to make the deadline, it will usually be because of difficulty in communicating with his client. For otherwise it should be as easy to file the notice of appeal--a simple document--as it would be to file a request for an extension of time within which to file the notice of appeal. Of course an appellant must not act too precipitately; there are sanctions for filing frivolous appeals. But it should not require thirty days to decide whether one has a nonfrivolous ground for appeal. The exotic excuses for failing to file a timely appeal--mistake of law (as here) and the like--come into play only when the notice has not been filed within the thirty days. All the interesting cases, therefore, will arise under the excusable-neglect standard. Perhaps all the cases, period; there are no reported decisions on the meaning of "good cause" in Rule 4(a)(5).
 
 
 10
 Mrs. Lorenzen argues that neglect cannot be excused unless circumstances beyond the appellant's control, such as a postal strike or a change in law, prevent compliance with the thirty-day deadline; there were no such circumstances here. If she is right, a mistake of law is never excusable neglect unless caused by an unanticipated retroactive change in law. Our decisions have refused to take so harsh a view. Feeder Line Towing Service, Inc. v. Toledo, Peoria & Western R.R., 539 F.2d 1107 (7th Cir.1976), holds that a mistake of law can be excusable neglect; the specific mistake was a failure, having nothing to do with a recent change in law, to realize that Rule 4 overrode an admiralty statute allowing ninety days to appeal. Id. at 1108. Redfield names "plausible misconstructions, but not mere ignorance, of the law or rules," as one of the types of excusable neglect, 818 F.2d at 602, while Cherrington states that "an attorney's good faith misinterpretation of a procedural rule may represent such excusable neglect that it would not necessarily be an abuse of discretion for a district court to grant an extension on this basis." 865 F.2d at 911-12. The many similar decisions in other circuits, mainly intoning the "plausible misconstruction" formula, are illustrated by 650 Park Ave. Corp. v. McRae, supra, 836 F.2d at 767, and by In re Cosmopolitan Aviation Corp., 763 F.2d 507, 514 (2d Cir.1985). We are not aware of any contrary decisions.
 
 
 11
 The underlying issue of policy is the appropriate sanction for a legal mistake, an issue that recurs throughout the law. E.g., United States v. Carlone, 666 F.2d 1112 (7th Cir.1981). If the mistake is slight, nonprejudicial, easily understandable, could happen to the best of us, etc., then dismissal of the appeal, with prejudice, may be an excessive sanction. Cf. Consolidated Freightways Corp. v. Larson, supra, 827 F.2d at 920; Torockio v. Chamberlain Mfg. Co., 56 F.R.D. 82, 88 (W.D.Pa.1972), aff'd without opinion, 474 F.2d 1340 (3d Cir.1973). To preserve marginal deterrence and retributive justice, and avoid excessive expenditures on compliance, sanctions should be proportional to the gravity of the wrongdoing that they punish. Okaw Drainage District v. National Distillers & Chemical Corp., 882 F.2d 1241, 1248 (7th Cir.1989). Life imprisonment is not an intelligent sanction for a parking ticket; and for an understandable and harmless error that results in a failure to file a timely notice of appeal the intelligent sanction is not automatic forfeiture of the appeal, regardless of its stakes and merits, but is to throw the appellant on the mercy of the district judge, who (as emphasized in the passage from Cherrington ) must decide as a matter of discretion whether to forgive the appellant's neglect to file a timely appeal. Redfield v. Continental Gas Co., supra, 818 F.2d at 601, 604 n. 3; Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat, 808 F.2d 1249, 1251 (7th Cir.1987). If Judge Evans had refused to exercise lenity here, we would affirm. The risk of such an outcome is punishment enough for an error at once understandable and harmless, yet very costly to the appellant.
 
 
 12
 Was the error here of that character? Well, to begin with, it certainly was harmless. Mrs. Lorenzen knew that the retirement plan intended to appeal--knew it at all relevant times. Second, the stakes in the appeal are substantial--they are the hundred thousand dollar difference between the amount that the plan concedes is due Mrs. Lorenzen as a death benefit and the amount the district judge awarded her--and the appeal is not frivolous (far from it, as we shall see). So by failing to file a timely notice of appeal, the plan took an enormous risk. The legal system need not worry that errors which confer large expected costs and no benefits on the people making them are likely to be so frequent that so harsh an additional penalty as automatic forfeiture of the appeal is necessary for deterrence. Such errors are largely self-deterring, therefore likely to be rare, and therefore not a grave social problem calling for draconian measures.
 
 
 13
 Third, the error was a natural one. When Mrs. Lorenzen filed her postjudgment motion it was plain that, insofar as it sought costs and attorney's fees and postjudgment interest, it was not a proper Rule 59 motion (a request for post judgment interest is plainly not an attempt to alter or amend the judgment) and did not affect the notice of appeal that the plan had already filed. The question mark was the request for prejudgment interest. Nothing in the appellate rules themselves classifies such a request as one to alter or amend the judgment; nor did any case in this circuit so hold, although to the discerning our statement in Soo Line R.R. v. Escanaba & Lake Superior R.R., 840 F.2d 546, 549 (7th Cir.1988), that "if a request for prejudgment interest is pending in the district court, we lack appellate jurisdiction," would reveal that such a request could not be collateral. See also Kaszuk v. Bakery & Confectionary Union, 791 F.2d 548, 553 (7th Cir.1986) (per curiam). Osterneck expressly so holds, of course, but it was decided on February 21, 1989, just two days before the thirty days ran out, and the plan's counsel cannot be faulted for having failed to discover the decision within that time.
 
 
 14
 True, from Charles v. Daley, our decision holding that substantive motions filed within ten days after entry of judgment are to be deemed Rule 59 motions, read together with Escanaba and Kaszuk, which make clear that motions for prejudgment interest are substantive motions, alert counsel should have inferred before Osterneck came down that a request for prejudgment interest, when filed within ten days, is such a motion. But if counsel was also familiar with White v. New Hampshire Dept. of Employment Security, supra, he knew that the statement of the rule in Charles and other cases, such as Harcon Barge Co. v. D & G Boat Rentals, Inc., 784 F.2d 665 (5th Cir.1986) (en banc), and Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc., 856 F.2d 873, 876 (7th Cir.1988), was, like so many legal generalizations, potentially misleading, since postjudgment motions for attorney's fees and costs are not Rule 59 motions even when filed within ten days of the judgment. They are not "substantive" motions within the meaning of Charles v. Daley, but this might not have been obvious and might have led to confusion concerning the scope of our rule. Buchanan v. Stanships reversed a decision holding, on the authority of Harcon, that a motion for costs was a substantive motion governed by the ten-day rule. 108 S.Ct. at 1131. So the potential for confusion was there, and in the circumstances counsel's error was not an egregious one, and, as we have said, it was harmless and (given the risk to the appellant) unlikely to recur.
 
 
 15
 Fourth, the error was induced by the conduct of the opposite party, that is, the party seeking to take advantage of the error. Mrs. Lorenzen's counsel filed a confusing motion--mislabeled, a mish-mash of Rule 59(e) and collateral relief, topped off with a superfluous request for postjudgment interest.
 
 
 16
 Under our precedents, and that of most other courts as well, with the possible exception of the Second Circuit, In re O.P.M. Leasing Services, Inc., 769 F.2d 911, 918 (2d Cir.1985) (Friendly, J.)--yet that case is distinguishable from this--Judge Evans was entitled to conclude that the error of the plan's counsel did not require that its appeal be forfeited.
 
 
 17
 We have jurisdiction, and come at last to the merits. Warren Lorenzen, a sales manager and long-time employee of S & H, was eligible to retire on February 1, 1987, having turned 65. As he was in the midst of managing a company project, the company requested him to postpone his retirement until July 1, and he agreed. At the same time he decided that when he did retire he would take his retirement benefits as a lump sum, rather than as a series of monthly payments for his life followed by monthly payments half as large to his wife for her life should she outlive him (the "50 percent joint and survivor option," as it was called). The taking of retirement benefits in a lump sum was an option expressly permitted by the plan, provided the spouse executed a written consent form, which Mrs. Lorenzen did. Since death is not retirement, in order to receive any retirement benefit at all, lump sum or annuity, the employee must live to the date of his retirement. If he dies before then, his spouse is entitled to a pre-retirement benefit but it is much smaller than the retirement benefit. On June 15, two weeks before his extended retirement date, Lorenzen suffered cardiac arrest and was hospitalized in grave condition. On June 27, he suffered cardiac arrest again and was plugged into life-support machinery. His condition was believed to be hopeless and his physicians advised Mrs. Lorenzen to request that the machinery be disconnected. She did so, it was disconnected, and Mr. Lorenzen died that day.
 
 
 18
 The plan documents do not define death, but the parties and the district judge assume that if Mrs. Lorenzen had not requested the removal of the life-support apparatus Mr. Lorenzen would have survived, within the meaning of the plan, until his retirement on July 1. In that event he would have received, pursuant to his earlier election, the lump-sum retirement benefit. Assuming he would then have been taken off life support, the lump sum would have passed to his widow either under his will or conceivably as marital property; the parties agree, in any event, that she would have gotten it. And this was the amount the district court ordered the plan to pay her. The plan argues that since Lorenzen died before he retired, the widow is entitled only to the pre-retirement death benefit--in present-value terms and rounded off, $89,000 versus $192,000. Of course if Lorenzen had received the lump sum, frittered it away at the gaming tables, and then died, Mrs. Lorenzen would be even worse off than she is (it is against this possibility that the spouse is required to sign a consent form, as she did), but the plan has not argued this possibility as a ground for reducing her damages.
 
 
 19
 In holding for Mrs. Lorenzen the district judge appears to have been moved by the human appeal of her case. This is understandable. To have to decide whether to order the removal of life support from a loved one is painful enough without having to incur an enormous financial penalty into the bargain. The equities are not all on one side, however. (They rarely are; the tension between formal justice and substantive justice is often, and perhaps here, illusory.) Life-support equipment is expensive and, to a considerable degree, futile and degrading. It should not be used to secure retirement benefits. If the parties to retirement plans envisaged such a use, they probably would define death as inability to "live" without life-support machinery--at least if permitted by state law, which might forbid the guardian of a patient even in a hopeless vegetative state to disconnect the patient's life-support machinery. Cruzan v. Harmon, 760 S.W.2d 408 (Mo.1988), cert. granted, --- U.S. ----, 109 S.Ct. 3240, 106 L.Ed.2d 587 (1989). By postponing his retirement Mr. Lorenzen took a risk that if he died his widow would obtain less money than if he retired as soon as he was eligible. But he was compensated for bearing this risk by being paid his full salary (which exceeded his retirement benefit, lump sum or annuity, evaluated on a comparable basis, i.e. as a monthly payment) for a longer time, and by having an expectation of slightly increased retirement benefits, for they rose with the length of time that he was employed, although not steeply. This "compensation" was, to be sure, ex ante rather than ex post--had Lorenzen been gifted with pre-vision he would have retired. But a gamble is not unfair merely because the gambler loses. Nor was the plan unjustly enriched at the Lorenzens' expense. "A pension plan is not 'unjustly enriched' where a pensioner dies early with no benefits payable to his survivor. That eventuality simply offsets cases where a pensioner lives well into old age and more benefits are paid to him than were statistically predictable." Cummings v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 389 (7th Cir.1986). Finally, the record contains no evidence of what it would have cost Mrs. Lorenzen to maintain her husband on life-support machinery for an additional three days. It could have been a considerable sum, depending on the scope and terms of his hospital insurance.
 
 
 20
 Mrs. Lorenzen had no contractual entitlement to retirement benefits--this much is clear--since her husband did not survive until retirement. ERISA, however, requires that a retirement or welfare plan make clear to the participants what the plan's terms and conditions are. 29 U.S.C. Sec. 1021. Mrs. Lorenzen claims that the plan did not adequately apprise her husband of the consequences of his electing the lump-sum rather than annuity form of retirement benefits and of his electing to keep on working rather than retire at the earliest possible opportunity. The first claim is frivolous; regardless of which election Lorenzen would have made if fully informed, his death nullified any retirement benefits to which he and his wife might have been entitled had he lived to retirement. If he had elected the annuity form, then even though Mrs. Lorenzen would have been entitled--had he retired and she outlived him--to an annuity that would outlast his death, this entitlement would have been contingent on his retiring; and before he retired he died.
 
 
 21
 The second claim is that the plan should have advised Mr. Lorenzen more clearly than it did that if he postponed his retirement he was risking a net loss of benefits, since pre-retirement death benefits were lower than retirement benefits. There was no want of clarity, however. The plan summary explains that "if you should die either before retirement or after retirement but before benefits begin ... your spouse or other beneficiary will receive a benefit.... [I]f you die after age 55 and your legal spouse is your beneficiary, this benefit will be the larger of 40% of the lump sum equivalent of the benefits you have earned under the plan or the amount he or she [i.e., the legal spouse] would receive if you had retired on the day before your death under the 50% joint-and-survivor option." Mr. Lorenzen could have been under no illusion that if he died before his extended retirement date arrived, his widow would receive one hundred percent of his lump-sum retirement benefits rather than 50 percent of his retirement annuity. The risk he took in not retiring as soon as he could was an informed, a calculated, one.
 
 
 22
 Mrs. Lorenzen does not argue that the plan was under a duty to monitor Mr. Lorenzen's deteriorating physical condition and advise her not to order the life-support machinery disconnected before July 1. Nor does she argue that, supposing the plan became aware of his condition, it should have advised her to elect, on her husband's behalf, immediate retirement. The election would have done the Lorenzens no good. Although Mr. Lorenzen was not contractually obligated to continue working until June 30--and we may assume that, with him unconscious, his wife was empowered to elect retirement on his behalf--the plan made retirement effective on the first day of the month following the decision to retire. That would have been July 1--too late.
 
 
 23
 Nor does Mrs. Lorenzen argue that the plan summary was defective for failing to advise participants of the consequences of finding themselves on life-support machinery shortly before the scheduled date of retirement. She is wise not to make that argument, for the law is clear that the plan summary is not required to anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status. Cummings v. Briggs & Stratton Retirement Plan, supra, 797 F.2d at 387; Stahl v. Tony's Building Materials, Inc., 875 F.2d 1404, 1408-10 (9th Cir.1989). If it were, the summaries would be choked with detail and hopelessly confusing. Clarity and completeness are competing goods.
 
 
 24
 Although we reverse, Mrs. Lorenzen is entitled to the pre-retirement death benefit (the precise amount of which is in dispute, requiring that we remand the case in any event). Is she entitled to prejudgment interest on that benefit? The plan points out that it offered her that benefit at the outset, and if she had accepted its offer she would have had the use of the money and would not be seeking interest on it from the plan. The offer was conditional on her abandoning her claim for retirement benefits, but in hindsight the condition was a reasonable one. Nevertheless the result of her declining the offer was that the plan had the use of money that is incontestably hers, and earned interest on money that she would have earned but for her good-faith dispute with the plan over the amount of benefits to which she was entitled. Moreover, while ex post the condition was a reasonable one, ex ante it was unreasonable. On what basis could the plan refuse to pay money incontestably due her, just because it contested her claim to more money? This was a breach of fiduciary duty, with overtones of duress and conversion. Selmer Co. v. Blakeslee-Midwest Co., 704 F.2d 924 (7th Cir.1983); Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1287-88 (7th Cir.1985).
 
 
 25
 Whether to award prejudgment interest in suits under federal statutes is a question of federal law, and, with growing awareness of the time value of money, the trend is running in favor of such awards. West Virginia v. United States, 479 U.S. 305, 310-11, 107 S.Ct. 702, 708-09, 93 L.Ed.2d 639 (1987); General Motors Corp. v. Devex Corp., 461 U.S. 648, 655-57, 103 S.Ct. 2058, 2062-63, 76 L.Ed.2d 211 (1983); Williamson v. Handy Button Machine Co., 817 F.2d 1290, 1297 (7th Cir.1987); Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1426-27 (7th Cir.1986); cf. Lovejoy Electronics, Inc. v. O'Berto, 873 F.2d 1001, 1007 (7th Cir.1989). It is a salutary trend--without it there is incomplete compensation to victims of wrongdoing and there are added incentives to resist and delay the bringing of the wrongdoer to book--which led us recently to conclude that the time had come "to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations." Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir.1989). We can think of no reason why the presumption should not apply to ERISA cases; we hold that it does apply. Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1219 (8th Cir.1981).
 
 
 26
 The award of prejudgment interest is necessary for full compensation of the victims of wrongdoing, as we have said, and there was wrongdoing here--not in the refusal to give Mrs. Lorenzen the larger amount that she sought but in the refusal to give her the smaller amount to which she was incontestably entitled. Moreover, the award of prejudgment interest has an independent ground in this case: the principle of unjust enrichment. Short v. Central States, Southeast & Southwest Areas Pension Fund, 729 F.2d 567, 576 (8th Cir.1984); Argonaut Ins. Co. v. Town of Cloverdale, 699 F.2d 417, 421 (7th Cir.1983). The retirement plan held money that belonged to Mrs. Lorenzen--held it on her account, as it were. Now that the collateral dispute is over, the plan must return it to her together with the fruits that it has gleaned by holding on to it. (The plan does not argue that the suit is frivolous. If it were, the plan would be entitled to sanctions that might--or might not--equal the amount of interest it has earned by having the use of the money to which Mrs. Lorenzen is entitled.)
 
 
 27
 The issue of prejudgment interest has another wrinkle. Thus far we have tacitly assumed that the pre-retirement death benefit to which Mrs. Lorenzen was and is entitled was a lump sum. The plan is ambiguous, however, and it is possible that Mrs. Lorenzen had a choice, which she never made, between a lump-sum and an annuitized benefit. The bearing of this choice on her entitlement to prejudgment interest, and on the computation of that interest, will be an issue for the district court on remand.
 
 
 28
 The judgment is reversed and the case is remanded with directions to award Mrs. Lorenzen only the pre-retirement death benefit to which she is entitled under her husband's retirement plan and (subject to the qualification in the preceding paragraph) prejudgment interest on that benefit, plus such attorney's fees if any as she may be entitled to under Bittner v. Sadoff & Rudoy Industries, 728 F.2d 820, 829-30 (7th Cir.1984), for her partial victory in obtaining prejudgment interest. The "victory" is indeed partial, quite apart from the lump-sum versus annuity issue, since if she had never brought this suit she would have received the death benefit as soon as it was due and would have had no occasion to seek prejudgment interest on it. The district court will have to decide on remand whether she is entitled to attorney's fees in these unusual circumstances. We vacate the district court's award of costs and attorney's fees to abide the remand, and award no costs in this court.
 
 
 29
 REVERSED AND REMANDED, WITH DIRECTIONS.
 
 
 30
 FAIRCHILD, Senior Circuit Judge, concurring.
 
 
 31
 The plan filed its notice of appeal promptly after entry of the judgment against it. Prompt action became too prompt when Mrs. Lorenzen filed her Rule 59 motion. Nullification of an otherwise proper notice of appeal resulted from a provision of Rule 4(a)(4), F.R.A.P.: "A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above."
 
 
 32
 With all respect, this provision appears to me to be a trap for the unwary. Nullification does not seem to be what one would anticipate, and it is not the only way the Rulemakers might have dealt with the situation. In dealing with another type of premature filing, subdivision (2) of Rule 4(a) provides that a notice filed too early is to be treated as filed at the proper time. It is difficult to identify any very significant problems which the nullification provision avoids.
 
 
 33
 Of course, we hold counsel responsible for awareness of all the Rules, but it seems fair to note that unless counsel has recently read this provision, he may quite reasonably fail to realize that a notice of appeal timely filed under subdivision (1) will be nullified by a motion of the type filed by Mrs. Lorenzen.
 
 
 34
 I agree with and join in Judge Posner's opinion. I want, however, to add my individual view that the district judge's discretion to extend the time for appeal, authorized by subdivision (5), is a proper safety valve for the harsh effect of the nullification provision. I see no sound reason why counsel's failure to file a second notice of appeal in these circumstances cannot be treated as excusable neglect where application is made within the limited time permitted by subdivision (5).
 
 CUDAHY, Circuit Judge, dissenting:
 
 35
 The majority displays an unusual lenity about jurisdiction, which is not apparent in its discussion of the merits. An errant lawyer is treated with unaccustomed consideration and indeed indulgence, with the result that a widow loses much of what a district judge--perhaps in an excess of generosity--has given her. I certainly do not suggest that the majority intended to go easy on jurisdiction in order to bear down on the merits. But that, for better or for worse, is the result of its uneven approach.
 
 
 36
 The majority considers the question of jurisdiction from the perspective of "excusable neglect" in a case where I believe such consideration is inconsistent with our prior case law. I do not quarrel with the majority's analysis insofar as it clearly signals a trend to more flexibility in dealing with questions of jurisdiction. But the majority has strayed from our existing jurisprudence in forgiving an attorney's failure to file a timely notice of appeal (because of a postjudgment motion) when such a requirement is emphatically signaled by our cases.
 
 
 37
 To begin, there ought to be great difficulty in finding excusable neglect here. The motion in question referred specifically to Rule 59--"plaintiff moves this court pursuant to R. 59 of the Federal Rules of Civil Procedure"--giving fair warning that the time for filing a notice of appeal was tolled (or at least that this was a strong possibility). The majority does not even mention the common practice of filing two notices of appeal if there is any question whether Rule 59 applies.
 
 
 38
 In any event, there should have been slight doubt that the principles of Rule 59 govern this case. The key to this conclusion is Charles v. Daley, 799 F.2d 343 (7th Cir.1986), which settled matters in this circuit. In that case, we wrote that substantive motions served within ten days of the entry of a judgment should be construed as Rule 59 motions, which toll the time for appeal. Id. at 347. The majority argues that this statement is too broad because, certainly, "postjudgment motions for attorney's fees and costs are not Rule 59 motions even when filed within ten days of the judgment." At 233. From this logic it concludes that "the potential for confusion was there." Id.
 
 
 39
 With all respect, I believe the majority's approach is misguided. Charles v. Daley does not say that all substantive, postjudgment motions filed within ten days of judgment are Rule 59 motions: it says that they should be treated as Rule 59 motions. Charles v. Daley, 799 F.2d at 347 ("all substantive motions served within 10 days of the entry of a judgment will be treated as based on Rule 59....") (emphasis supplied). See also Soo Line R.R. v. Escanaba & Lake Superior R.R., 840 F.2d 546, 549 (7th Cir.1988); Kaszuk v. Bakery & Confectionary Union, 791 F.2d 548, 553 (7th Cir.1986) (per curiam) (both suggesting that motion for prejudgment interest is "substantive" and not collateral). Cf. Buchanan v. Stanships, Inc., 485 U.S. 265, 108 S.Ct. 1130, 1132, 99 L.Ed.2d 289 (1988) (Charles v. Daley rule not applicable for costs, a collateral issue). And this analysis has been repeated in nearly every Seventh Circuit opinion to consider the question since Charles v. Daley.[1]
 
 
 40
 Not only is the policy underlying these decisions apparent, but it has been explicitly recognized by this court. Judge Easterbrook set the stage for this policy by announcing in Charles v. Daley that we adopted as our rule the Fifth Circuit's reasoning in Harcon Barge Co. v. D & G Boat Rentals, Inc., 784 F.2d 665 (5th Cir.1986) (en banc), cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986), that all substantive motions filed within ten days should be treated as Rule 59 motions because "[a] bright-line rule is essential to carry out the very purpose of the 1979 amendment to Rule 4(a)(4) and to avoid wasteful confusion over the status of a previously filed notice of appeal." Id. at 667 (emphasis supplied); see 799 F.2d at 347. Indeed, our decisions even before Harcon Barge reflected this approach. See Western Indus., Inc. v. Newcor Canada Ltd., 709 F.2d 16, 17 (7th Cir.1983) ("Post-judgment motions filed within 10 days should where possible be construed as Rule 59(e) motions to avoid otherwise endless hassles over proper characterization.").
 
 
 41
 Further, in Western Industries, we expressly warned litigants not to file their notices of appeal before the time for making a post-judgment motion has elapsed: "We therefore caution parties that do not want to run the risk of having their appeals dismissed as premature to wait 10 days before filing the notice of appeal." 709 F.2d at 17. A clearer warning could not have been given. Yet the Plan in the case before us still filed its notice of appeal seven days after the entry of the district court's order, in direct contravention of our advice in Western Industries. That the majority characterizes this as "excusable neglect," given the clear state of our jurisprudence and our cautionary remarks, is surprising.
 
 
 42
 To justify its finding of jurisdiction the majority expresses the view that dismissal is too harsh a "sanction" for the failure to file a timely appeal in this case. The opinion muses about retributive justice and deterrence. It suggests that the Plan and its lawyer may not deserve to be thrown out of court and, in any event, do not need to be thrown out of court to persuade them to be more careful in the future. It analogizes: "Life imprisonment is not an intelligent sanction for a parking ticket; and for an understandable and harmless error that results in a failure to file a timely notice of appeal the intelligent sanction is not automatic forfeiture of the appeal...." Supra at 232. This analysis misses the point: the filing of a timely appeal is a jurisdictional predicate. Therefore, the dismissal of an action for failure to file a timely appeal is not a "sanction" at all; rather, it is simply a recognition that the court cannot pass on the merits of the case. Our cases have treated it this way and it is difficult to see why this case is an exception.
 
 
 43
 With respect to the merits, I do not quarrel with the essentials of the majority's analysis (I simply believe there is no jurisdiction to reach the merits). But I am at a loss to understand some of the majority's proffered justifications for its result. Mr. Lorenzen deferred his retirement for six months for the convenience of his employer. There is nothing to suggest that anyone brought to his or his wife's attention the possibility that she would suffer drastic financial penalties if he happened to die in the interim. Nor certainly is there any indication that he "gambled" six months' additional compensation against his wife's taking the risk of pension loss. The "rational bookmaker's" approach to problems is singularly out of place here.
 
 
 44
 By the same token there is no evidence that Mrs. Lorenzen knew she would suffer financially if she allowed life supports to be withdrawn from her husband "too soon." The human costs of this kind of decision are so overwhelming, economics is the wrong analysis to bring to the problem. And a cost-benefit study is beside the point. Fate claimed Mr. Lorenzen in a period when he was doing his employer a favor. And fate pressed on Mrs. Lorenzen a tragic choice which, quite by chance from her point of view, resulted in losing half her pension benefit. Judge Evans thought these fortuities too cruel and decided the case in favor of the widow. Judge Evans, I believe, stepped back from the remorseless logic of the law with respect both to the time-to-appeal question and to the merits.
 
 
 45
 On the other hand, the majority's unusually flexible and sympathetic outlook on jurisdiction has the effect of permitting it to deal quite literally (and unfortunately for Mrs. Lorenzen) with the merits. Although no discrepancy in approach is apparently intended, the loss to Mrs. Lorenzen is no less real or substantial. I do not agree that we have jurisdiction to hear the Plan's appeal, and I therefore do not reach the merits of the district court's award.
 
 
 46
 I therefore respectfully dissent.
 
 
 
 [1]
 See, e.g., Adams v. Lever Brothers Co., 874 F.2d 393, 394 (7th Cir.1989) ("Plaintiffs' motion to reconsider the June 8 order, whatever its caption, was supported by Rule 59, see Charles v. Daley....") (emphasis supplied); Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc., 856 F.2d 873, 876 (7th Cir.1988) ("The rule in this circuit is 'that all substantive motions served within 10 days of the entry of a judgment will be treated as based on Rule 59, and therefore as tolling the time for appeal.' Charles v. Daley, 799 F.2d 343, 347 (7th Cir.1986) (citing Harcon ...).") (emphasis supplied); Marine Bank, Nat'l Ass'n v. Meat Counter, Inc., 826 F.2d 1577, 1579 (7th Cir.1987) (disputed motions treated as Rule 59 motions); Kladis v. Brezek, 823 F.2d 1014, 1017 (7th Cir.1987) (motion made within ten days is treated as Rule 59 motion, "whatever its label")