### Bill J. EHRMAN, Plaintiff,

v.

### The HENKEL CORPORATION LONG-TERM DISABILITY PLAN and Prudential Life Insurance Company, Defendants.

#### No. 01–2100.

United States District Court,
C.D. Illinois,
Urbana Division.

April 4, 2002.

Mark D. DeBofsky, Nathan Q. Rugg, Dale, Debofsky & Bryant, Chicago, IL, for Plaintiff.

Edward N. Robles, Anthony F. McAleenan, Edward N. Robles, Sanchez & Daniels, Chicago, IL, for the Henkel Corp.

Robert T. Varney, Edward N. Robles, Anthony F. McAleenan, Garretson & Santora, Ltd., Chicago, IL, Robert T. Varney, Sanchez & Daniels, Bloomington, IL for Prudential.

## ORDER

BERNTHAL, United States Magistrate Judge.

In April 2001, Plaintiff Bill Ehrman filed a Complaint (# 1) against Defendants The Henkel Corporation Long Term Disability Plan (hereinafter "Henkel Plan") and Prudential Life Insurance Company (hereinafter "Prudential") alleging improper denial of disability income benefits pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") (29 U.S.C. § 1132(a)(1)(B)). This claim arose after Prudential terminated Ehrman's disability benefits in April 2001. In November 2001, Ehrman filed a Motion For Summary Judgment (# 21). In January 2002, Prudential filed a Response To Plaintiff's Motion For Summary Judgment (# 25). After reviewing the pleadings and record, this Court **GRANTS** Plaintiff's Motion For Summary Judgment (# 21).

### I. Background

Bill Ehrman worked full-time for the Henkel Corporation as a chemist and in various other capacities from May 1977 until October 1998. Through his employment with the Henkel Corporation, Ehrman was insured under a long-term disability insurance policy (hereinafter "LTD plan") underwritten by Prudential. Under the LTD plan, benefits were payable for "total disability," which was defined as follows:

"[D]isability" means your inability because of an illness or injury to perform the type of occupation in which you normally engage for the first 18 months of longterm disability. The 18 month period begins the day your LTD benefits commence. This period is called the "Initial Duration." After the first 18 months of disability, "disability" means your inability because of illness or injury to perform any job for which you are qualified by training, experience or education.

(Comp # 1, Exh. A, p. 1.) The LTD plan also noted that "[b]enefits are not payable for your Total Disability for more than 24 months if your Total Disability, as determined by Prudential, is caused at least in part by a mental, psychoneurotic or personality disorder." (MSJ # 21, Exh. 3, p. 2, hereinafter referred to as "R.") The LTD plan's benefits are payable at a rate equal to 60% of monthly earnings.

In October 1998, Ehrman ceased working at the Henkel Corporation due to unstable angina and severe coronary artery disease. In February 1999, Ehrman applied for long-term disability benefits under the LTD plan. Ehrman supported his claim for long-term disability benefits with numerous medical records and reports. After an initial dispute, Ehrman's claim was approved, resulting in Ehrman's receipt of 60% of his pre-disability income. Following his receipt of the benefits, Ehrman also applied for Social Security disability benefits. Ehrman was initially denied Social Security benefits, and that decision was appealed. In March 2000, a Senior Attorney Advisor Decision

approved Ehrman's application for Social Security disability insurance benefits. The payment of Social Security benefits integrated with Prudential's payment of long-term disability benefits, thus reducing Ehrman's monthly benefits under the Prudential plan by approximately $400.00 a month.

After receiving benefits for approximately two years, Prudential notified Ehrman in September 2000 that his benefits were being terminated because his condition did not preclude obtaining gainful employment at another occupation. (R. 79.) Ehrman appealed this decision to Prudential, which resulted in a reinstatement of his benefits through April 2001. At that point, Prudential claimed that the 24–month mental disability limitation became applicable. In April 2001, Prudential terminated Ehrman's benefits after determining that his disability was caused at least partly by a mental, psychoneurotic, or personality disorder.

In April 2001, Ehrman filed a complaint (# 1) against the Henkel Plan and Prudential, seeking recovery of benefits pursuant to Section 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)). Following discovery, Ehrman filed a Motion For Summary Judgment (# 21) in November 2001.

## II. Standard of Review

The Court grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Id.* at 322–23, 106 S.Ct. 2548. The party opposing the motion must then make a show-ing sufficient to demonstrate the existence of a material issue for trial. *Id.*

When reviewing an employee benefit claim decision brought under Section 1132(a)(1)(B) of ERISA, the court applies a plenary or *de novo* standard of review unless the benefit plan or insurer has clearly reserved discretion to determine benefit eligibility. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). *De novo* review is the default rule, and thus any uncertain language concerning the scope of judicial review must be construed as favoring *de novo* review. *Herzberger v. Standard Insurance Co.,* 205 F.3d 327, 330 (7th Cir.2000).

In *Herzberger,* the Seventh Circuit formulated a two-step analysis for determining whether an ERISA plan confers the necessary discretion to the plan administrator. First, a court must determine whether the ERISA plan uses the safe harbor language as established in *Herzberger. Id.* at 331. The safe harbor language is as follows: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Id.* If the language does track the Seventh Circuit's safe harbor language, then *de novo* review is foreclosed. However, if the language does not follow the safe harbor, the court must determine whether the ERISA plan made "reasonably clear that the plan administrator is to exercise discretion." *Id.*

Prudential claims that *de novo* review is improper, and that the Court should apply the "arbitrary and capricious" standard when interpreting the LTD plan. Prudential claims that language contained in their LTD plan confers the necessary discretion to determine benefit eligibility because it makes reference to "when Prudential determines" the conditions are met.

This language is followed by what Prudential calls "subjective elements" that they claim clearly indicate that Prudential shall exercise its discretion. The language of the LTD Plan is as follows:

"Total Disability" exists when Prudential determines all of the following conditions are met:

(1) Due to sickness or accidental injury, both of these are true:

(a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

(b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training, or experience.

(R. 2.)

Based on the language of the LTD plan, this Court disagrees that this language clearly reserves to Prudential the discretion to determine benefit eligibility. Prudential's language does not track the Seventh Circuit's safe harbor established in *Herzberger*. Furthermore, the language does not make "reasonably clear that the plan administrator is to exercise discretion." *Id.* Prudential relies on the language "when Prudential determines" included in the contract, followed by the so-called subjective factors. The Seventh Circuit has clearly established that the mere fact that a plan requires an administrator to determine eligibility does not give the employee sufficient notice that the plan administrator will get the benefit of the arbitrary and capricious standard on judicial review. *Id.* at 332. Here, the language Prudential points to concerning "when Prudential determines" does not make reasonably clear to an employee that the administrator is exercising its discre-

tion, and instead merely states that the plan administrator will determine eligibility.

Moreover, Prudential's so-called "subjective elements" do not clearly indicate that the plan administrator is to exercise discretion. Initially, this Court questions whether these elements are in fact subjective. Although the Seventh Circuit has noted that language stating that the plan administrator will determine eligibility followed by subjective elements *may* be sufficient to confer discretion on the plan administrator, the court found that the subjective elements could not be "different ways of asking whether the applicant is unable to perform the duties of the job for which he is reasonably fitted by his training or experience." *Id.* at 333. Here, the elements Prudential lists are simply ways of asking if the applicant can perform his duties, and do not clarify that the plan administrator can exercise discretion. Therefore, the Court finds that Prudential did not reserve the necessary discretion, and will review *de novo* Prudential's decision to terminate Ehrman's disability benefits.

### III. Analysis

#### A. Motion for Summary Judgment against Prudential

■ Ehrman has provided numerous medical records and reports establishing that he suffers from severe angina and severe coronary artery disease. This evidence is sufficient to illustrate that Ehrman is totally disabled according to the LTD plan's language. For example, Ehrman's physician, Dr. Jeffrey Long, stated in a July 2000 report that Ehrman would "never" be able to return to his regular work. (R. 89.) Dr. Long also stated that "no change of occupation would make him symptom free and allow work." (R. 89.) Dr. Long went on to remark that Ehrman "has suffered from premature severe coro-

nary artery disease. His angina is daily with extremely limited potential for work due to pain. I see nothing in the future which will alter this." (R. 90.) In September 2000, Dr. Long wrote to Prudential explaining that Ehrman "continues to suffer from recurrent angina often times on a daily basis to a severe extent requiring nitroglycerin." (R. 75.) Dr. Long further stated in the letter that Ehrman was "indeed disabled" and that he "could not cope with the day to day grind of just getting up and getting to work without precipating angina and he certainly cannot be relied on to be at a job whether it was sitting or laying all day without precipitating angina." (R. 75.)

At a functional capacity evaluation conducted on Ehrman, the physical therapist who conducted the evaluation noted that "[b]ased on the medical records and the examinee's performance on this functional study, it is this evaluator's opinion that the examinee cannot function independently in the competitive labor market without accommodations." (R. 15.) Another physician, Dr. Herbert White, reviewed the functional capacity evaluation and expressed in a letter to Dr. Long that Ehrman was "totally and permanently disabled from performing any job without a significant risk of aggravation of his Coronary Artery Disease." (R. 12.)

Prudential first attempts to minimize this evidence of total disability by pointing to a few scant factors that they claim show that Ehrman is not totally physically disabled. For example, Prudential refers to Dr. Long's statement in his September 2000 letter that Ehrman did "show some significant improvement." (R. 75.) Dr. Long, however, goes on to note in the same sentence that Ehrman "clinically is no better and that this patient is truly disabled and is unable to work." (R. 75.) Prudential also points to evidence in Dr. Long's report suggesting that Ehrman

was capable of sitting for twelve to eighteen hours, standing for one to two hours, and walking for one block. (R. 89.) Once again, however, this evidence does little to contradict the medical doctors' overall testimony concerning Ehrman. In addition, this evidence does *not* suggest that Ehrman is capable of performing certain jobs. Prudential appears to focus on a few items in the record that seem to support its view, without examining these factors in context and in relation to Ehrman's record as a whole. Prudential cites no medical opinions that suggest that Ehrman can hold down employment considering his condition. Moreover, Prudential in no way contradicts or challenges Ehrman's medical evidence. The few items that Prudential does refer to do not create genuine issues of material fact that would defeat summary judgment. It is clear from the record that Ehrman is totally disabled and is unable to work.

█ Prudential also makes the argument that Ehrman's disability is based in part on mental disability, thus implicating the LTD plan's language limiting benefits for 24 months. Prudential's argument is that there is evidence that Ehrman could perform job duties in a sedentary position, and that this would be enough to make Ehrman not totally disabled. According to Prudential, this evidence indicates that Ehrman is totally disabled *only* when combined with his alleged mental disorder. Prudential contends that Ehrman's total disability was based *in part* on his mental disorders, therefore Ehrman should have been allowed benefits for only 24 months, based on the LTD plan's explicit language. To support this contention, Prudential relies on the facts that Ehrman was treated for depression from 1994 to 2000, and that one doctor noted that Ehrman's cognitive decline may be as a result of depression.

Prudential's argument, however, fails on a *de novo* review of the LTD plan's language. The Court construes the plain language of the LTD plan to apply to a situation where someone is not totally physically disabled, but accompanying mental disorders combined with the physical disorders result in total disability. For example, the language would apply to a situation where someone's total disability could be attributable 95% to physical disorders and 5% to mental disorders. The mental disability provisions would apply because the person would be *totally disabled* but not *totally physically disabled,* and thus the total disability was *in part* due to a mental disorder.

Thus, the Court construes the 24–month limit to be inapplicable to someone who is totally disabled physically and, in addition, has mental disorders. In these cases, the total disability would not be attributable *in part* to mental disorders, because the person would be totally disabled even in the absence of any mental disorder. This Court's construction of the LTD plan makes more sense than Prudential's interpretation of the language at issue. Under Prudential's interpretation, an LTD plan beneficiary who first becomes totally physically disabled and who later develops mental disabilities would be limited to 24 months of benefits. However, in such cases, the disability itself was not *in part* attributable to mental disorders. If the individual is totally physically disabled, then no inquiry into their mental state is required. The LTD plan language concerning total disability in part attributable to mental disorders can only be applicable when the individual is *not* totally physically disabled, and any mental disorder combined with the physical disorders results in the individual being totally disabled.

Based on this case's facts, as illustrated above, Ehrman was totally physically disabled apart from any mental disorders.

Medical evidence indicates that Ehrman's angina left him unable to work. Dr. Long indicated that Ehrman was totally disabled, and encouraged Prudential to seek outside medical opinions to verify his belief that "[t]here is no doubt in my mind that Mr. Ehrman could not hold down any job" without precipitating his angina. (R. 75.) In addition, Dr. White, who reviewed Ehrman's functional capacity evaluation, found cardiac insufficiency and indicated that Ehrman was "totally and permanently disabled from performing any job without a significant risk of aggravation of his Coronary Artery Disease." (R. 12.) This medical evidence establishes that Ehrman was totally physically disabled as a result of his angina. Therefore, Ehrman's total disability was not caused in part by mental disorders.

To the extent that either of the parties rely on the Social Security decisions, this Court did not give much weight to these findings because it was unable to determine to what extent these findings were based on mental disability or other factors. There are no genuine issues of material fact with regard to whether Ehrman is totally disabled. Furthermore, the Court finds that there are no genuine issue of material fact as to the fact that Ehrman is totally disabled based solely on his physical condition, apart from any mental disorder. As stated above, Ehrman was totally disabled based solely on his physical condition; therefore, the 24–month limit on benefits does not apply to Ehrman. Accordingly, the Court grants Plaintiff's motion for summary judgment against Prudential.

### B. Summary Judgment Against the Henkel Plan

Defendant Henkel Plan did not file a response to Plaintiff's Motion for Summary Judgment (# 21), and therefore, based on local rule 7.1(B)(1), this Court will presume there is no opposition to the

motion for summary judgment and will rule without further notice as to the Henkel Plan. In addition, because it did not comply with local rule 7.1(D) by failing to file a required document to respond to movant's disputed facts, this Court also understands that the Henkel Plan admits these facts. Based on the Henkel Plan's failure to respond to Plaintiff's motion for summary judgment and its failure to respond to movant's disputed facts, the Court grants Plaintiff's motion for summary judgment against the Henkel Plan.

## C. Attorney's Fees

In his motion for summary judgment, Plaintiff Ehrman seeks an award of attorney fees. Section 502(g)(1) of ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Seventh Circuit has applied two tests when considering whether to award attorney fees in ERISA cases. *See Quinn v. Blue Cross & Blue Shield Assoc.*, 161 F.3d 472, 478 (7th Cir.1998). The first test assesses the following five factors: (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Id.; LaBarge v. Life Insurance Company of North America*, No. 00 C 0512, 2001 WL 109527, at *9 (N.D.Ill.2001). The second test considers whether the losing party's position was "substantially justified." *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984). The Seventh Circuit recently reformulated the two tests into one question: "Was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Quinn*, 161 F.3d at 479. Although a modest presumption exists in favor of awarding attorney fees to the prevailing party in an ERISA case that decision lies within the Court's discretion. 29 U.S.C. § 1132(g)(1); *Bowerman v. Wal–Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir.2000).

Here, there is no evidence Defendant acted in bad faith or irrationally when it terminated Plaintiff's benefits after the 24–month period. Had Prudential relied on bits and pieces of the medical record to conclude that Plaintiff was not disabled, the Court would likely have found such conduct in bad faith. However, Prudential relied upon those portions of the medical record dealing with Plaintiff's mental state in its conclusion that his disability was due in part to a mental disorder. While the Court in its de novo review has reached a different conclusion, it cannot say that Prudential's position was irrational, in bad faith, or taken to harass Plaintiff. Accordingly, the Court denies the award of attorney fees.

## D. Prejudgment Interest

Plaintiff also seeks prejudgment interest on the amount of reimbursement. Prejudgment interest is appropriate in ERISA cases and the presumption in favor of prejudgment interest, especially in ERISA cases, is widely recognized. *Rivera v. Benefit Trust Life Insurance Co.*, 921 F.2d 692, 696–97 (7th Cir.1991); *Lorenzen v. Employees Retirement Plan of the Sperry and Hutchinson Co.*, 896 F.2d 228, 236–37 (7th Cir.1990).

Prejudgment interest is viewed as a form of compensatory damage designed to make the plaintiff whole and place him or her in the same position as if no violation had occurred. *City of Milwaukee v. Cement Division, National*

*Gypsum Co.*, 515 U.S. 189, 195, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995); *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (the award of pre-judgment interest is an element of a plaintiff's complete compensation). The purpose of prejudgment interest is to compensate the victim and prevent unjust enrichment. *Lorenzen*, 896 F.2d at 236–37. Whether to award prejudgment interest to an ERISA plaintiff is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Trustmark Life Ins. Co. v. University of Chicago Hosps.*, 207 F.3d 876, 885 (7th Cir.2000).

■ Defendant has failed to present any arguments in response to Plaintiff's request for prejudgment interest. In considering the award of attorney fees, the Court concluded that Defendant did not act in bad faith in disputing Plaintiff's eligibility for benefits. Nevertheless, the main reason for awarding prejudgment interest is to give a plaintiff full compensation for the time value of the money that was wrongfully withheld. That purpose applies in this case. Accordingly, the Court agrees with Plaintiff that he is entitled to prejudgment interest.

Having determined that Defendant erred by terminating Plaintiff's payments, the Court now directs Defendant to pay Plaintiff prejudgment interest on the amount wrongfully withheld beginning from the date when each payment was due (assuming the payments would have been made periodically). Interest will be calculated based on the short-term prime rate, as directed by the Seventh Circuit. *National Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1112–13 (7th Cir.1998); *Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 274 (7th Cir.1993); *Babbitt v. Zale Enterprises, Inc.*, No. 99 C 5059, 2001 WL 128157, *1 (N.D.Ill. Feb.8,

2001). Furthermore, the interest should be compounded so as to more closely put Plaintiff in the position he otherwise would have been in. *National Gypsum*, 144 F.3d at 1112–1113; *Neal v. Honeywell, Inc.*, 995 F.Supp. 889, 897 (N.D.Ill.1998); *Babbitt*, 2001 WL 128157, *1.

## IV. Summary

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion For Summary Judgment (# 21) as to liability and prejudgment interest. No attorney fees shall be awarded. The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against Defendants. This case is terminated.