**ZAPATA GULF MARINE CORPORATION, Assignee of Robert E. Brizendine, Trustee of the Chapter 7 Estate of American Caribe Lines, Inc.**

v.

**PUERTO RICO MARITIME SHIPPING AUTHORITY, Sea–Land Service, Inc., and Trailer Marine Transport Corporation.**

Civ. A. No. 86–2911 "I".

United States District Court,
E.D. Louisiana.

July 5, 1991.

On Motion for Reconsideration, for Relief from Judgment and Enforcement of Mandate July 26, 1991.

Edward F. Kohnke, IV, Joseph N. Mole, M. Shawn McMurray, Lemle & Kelleher, New Orleans, La., for Zapata Gulf.

Dando B. Cellini, J. Forrest Hinton, Victoria K. McHenry, Alexander M. McIntyre, Jr., Dermot McGlinchey, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., Harvey C. Koch, Koch and Rouse, New Orleans, La., for Trailer Marine Transport Corp.

MENTZ, District Judge.

## ORDER AND REASONS

The Court addresses here the motion of the defendant, Trailer Marine Transport Corporation (TMT), for relief under Federal Rule of Civil Procedure 60(b) from two judgments entered in this matter. Specifically, TMT seeks to have the Court vacate the judgments of March 22, 1990 and November 9, 1990 and re-renter a final and appealable judgment disposing of all claims. After reviewing the record, the briefs submitted by the parties, and the law, the Court finds that the circumstances in this case do not warrant relief under Rule 60(b).

### I.

In this case, the plaintiff, Zapata Gulf Marine Corporation (Zapata), alleged that the defendant, Trailer Marine Transport Corporation (TMT), violated various federal antitrust laws. The jury agreed and awarded Zapata $14 million in actual damages. Pursuant to section 4 of the Clayton Act, the Court trebled the plaintiff's damages and entered a judgment on March 22, 1990 under Federal Rule of Civil Procedure 54(b) for $41 million.[1]

Zapata and TMT timely filed post-judgment motions, including TMT's motion for

---

1. The judgment was pursuant to Fed.R.Civ.P. 54(b) because the jury verdict did not resolve all claims, TMT's counterclaims and third-party claims having been severed from the trial of the main demand. The judgment was for $41 million rather than $42 million ($14 million trebled) due to a credit in TMT's favor as the result of Zapata's settlement with another party. *See Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.,* 635 F.2d 118 (2nd Cir.1980), *aff'd,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982).

judgment notwithstanding the verdict and/or for a new trial, and Zapata's motion for prejudgment interest under § 4 of the Clayton Act. After the Court denied the jury and new trial, but while Zapata's motion for prejudgment interest was pending, TMT filed its only notice of appeal, seeking review of the $41 million judgment of March 22, 1990 and the order denying jnov and new trial. Thereafter, the Court denied Zapata's motion for prejudgment interest. Pursuant to a stipulation between the parties, the Court entered a separate judgment on November 9, 1990 denying Zapata's motion for pre-judgment interest.

On February 25, 1991, the Fifth Circuit entered an opinion dismissing TMT's appeal for lack of jurisdiction based on TMT's failure to effectively appeal. The Fifth Circuit held that Zapata's timely filed motion for prejudgment interest under § 4 of the Clayton Act constituted a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), and therefore, under Appellate Rule of Procedure 4(a)(4)[2], TMT's only notice of appeal was nullified by the pendency of Zapata's Rule 59(e) motion. *See Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority,* 925 F.2d 812 (5th Cir.1991), *cert. denied,* — U.S. —, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991).

On March 6, 1991, TMT filed its Motion for Relief from Judgment under Rule 60(b). At that time, the Fifth Circuit had not issued the mandate from the dismissal of TMT's appeal because TMT's application for rehearing was pending. Thus, this Court did not have power to vacate the judgment, except with leave of the appellate court. *See Lairsey v. Advance Abrasives Co.,* 542 F.2d 928, 930 (5th Cir.1976). On March 12, 1991, in accordance with the procedures outlined in *Lairsey,* this Court issued a Memorandum and Notice of Intention to grant TMT's motion in the event

that the Fifth Circuit granted leave to do so by remanding the case to the district court. On April 2, 1991, the Fifth Circuit denied TMT's motion to remand the case to the district court and TMT's motion for rehearing. After obtaining a stay of the mandate, TMT filed a Petition for Writ of Certiorari in the United States Supreme Court. The Supreme Court denied the petition on June 28, 1991. Anticipating imminent issuance of the mandate, TMT filed on the afternoon of June 28, a Motion for Entry of Fed.R.Civ.P. 60(b) Relief reurging its prior motion. Both TMT and Zapata adopted their briefs filed in connection with TMT's prior Rule 60(b) motion and TMT's appellate motion to remand. On July 3, 1991, the Fifth Circuit issued its mandate on the dismissal of TMT's appeal.

## II.

■ As the dismissal of TMT's appeal is now final, this Court may entertain TMT's motion for relief under Rule 60(b) without leave of the appellate court. *See Standard Oil Co. of California v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). Contrary to Zapata's argument that TMT seeks to have the Court overrule the Fifth Circuit's opinion that TMT's appeal was ineffective, the matter under consideration is strictly limited to whether TMT is entitled to relief under Rule 60(b). Clearly, the law of the case is that TMT never filed an effective appeal.

Zapata argues, however, that if the district court entertains TMT's Rule 60(b) motion, it will be in defiance of the Fifth Circuit's order denying TMT's motion to remand to the district court. Zapata argues that in denying TMT's motion to remand, the Fifth Circuit considered and rejected the merits of Rule 60(b) relief. Although the Fifth Circuit gave no reasons for denying the remand, Zapata argues

---

**2.** Appellate Rule 4(a)(4) provides in pertinent part:

> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 to alter or amend the judgment, ... the time for appeal for all parties shall run from the entry of the order ... granting or denying [the] motion. A no-

tice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.

Fed.R.App.P. 4(a)(4) (West 1991).

that the Fifth Circuit's rejection of the merits of Rule 60(b) relief is implicit in its refusal to strike Zapata's opposition to TMT's motion to remand in which Zapata presented substantive arguments for denying Rule 60(b) relief. After careful consideration, this Court does not appreciate the orders of the Fifth Circuit denying TMT's motions to remand and to strike Zapata's opposition as a prohibition against 60(b) relief or an implication that the issue was disposed of on appeal.

TMT's motion to remand was styled: "Motion to Remand and Preserve Defendant–Appellant's Right to Pursue all Appellate Remedies Or, In the Alternative, To Withhold Mandate Pending Exhaustion of Appellate Remedies." That the Fifth Circuit chose the alternative route of exhausting appellate remedies instead of remanding is not a rejection of Rule 60(b) relief. The stated position of the Fifth Circuit is that where the disposition of a motion filed after a notice of appeal does not affect the merits of the judgment being appealed, "judicial economy and common sense are best served by proceeding with the appeal on the merits and allowing the movant in the district court to refile his motion on remand after appellate judgment." *Echols v. Parker*, 909 F.2d 795, 802 (5th Cir.1990) (citing *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1326–27 (5th Cir.1985)). Here, the Rule 60(b) motion had no effect on the merits of the judgment TMT sought to appeal. Once the Fifth Circuit considered and denied TMT's Petition for Rehearing and the Suggestion for Rehearing En Banc, a remand was unnecessary because jurisdiction would automatically vest in the district court upon issuance of the mandate dismissing the appeal.

Moreover, the Fifth Circuit had no jurisdiction to address the merits of Rule 60(b) relief because the district court had entered no decision, order, or judgment on TMT's entitlement to 60(b) relief.[3] *See* 28 U.S.C. § 1291 (West 1986) ("The Courts of Appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States"); *Huckeby v. Frozen Food Express*, 555 F.2d 542, 545–46 (5th Cir.1977) ("The United States Courts of Appeal are courts of limited statutory jurisdiction.")

The Third Circuit Court of Appeals in *Sellers v. General Motors Corp.*, 735 F.2d 68 (3rd Cir.1984), reached these same conclusions under circumstances similar to the case at bar. In that case, the trial court denied Sellers' Rule 60(b) motion because it construed the appellate court's denial of a motion to remand for consideration of a Rule 60(b) motion as a finding that Rule 60(b) relief was not warranted. The Third Circuit stated:

> The trial court denied Sellers' timely Rule 60(b) motion on the ground that the action of this court established as law of the case that the motion should be denied. Plainly the judgment of this court did not review a Rule 60(b) order, for no such order was before us. The trial court reasoned, however, that because we denied Sellers' motion for a remand to consider his Rule 60(b) motion we must have considered its merits and found against him. We did not. The denial of the remand motion established no more than that we would decide the pending appeal on the record made in the district court prior to the filing of the notice of appeal. Our affirmance on that record did not limit the power of the district court to consider Rule 60(b) relief.

*Id.* at 69 (citing *Standard Oil*, 429 U.S. at 18–19, 97 S.Ct. at 32). Accordingly, the Court finds that it has authority to address TMT's Rule 60(b) motion.

### III.

■ TMT's motion is brought pursuant to Federal Rule of Civil Procedure 60(b), subsections (1) and (6), which provide:

**3.** The district court's Memorandum and Notice of Intention specifically stated at page 8: "There being no jurisdiction to grant Trailer Marine [Transport] Corporation's Rule 60(b) motion, this Memorandum and Notice of Intention is issued only for the purpose of informing the Fifth Circuit of the district court's inclination to grant the motion and obtaining leave of the Fifth Circuit to do so."

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b)(1) and (6) (West 1991).

■ The general purpose of Rule 60 is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done. 11 C. Wright and A. Miller, *Federal Practice and Procedure: Civil*, § 2851 at 140 (West 1973). The Fifth Circuit's opinion in *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir.1981), describes the dual interests that Rule 60(b) seeks to satisfy:

> [T]he rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.' ...
>
> In this light, it is often said that the rule should be liberally construed in order to do substantial justice. What is meant by this general statement is that, although the desideratum of finality is an important goal, the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause. This is not to say that final judgments should be lightly reopened. The desirability of order and predictability in the judicial process calls for the exercise of caution in such matters. But there can be little doubt that Rule 60(b) vests in the district courts power 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'

*Id.* at 401 (citations and footnote omitted).

■ TMT seeks relief under Rule 60(b) because it failed to take an effective ap-

peal. Ordinarily a district court may not vacate and re-enter a judgment under Rule 60(b)(1) or (6) in order to allow an appeal that would otherwise be untimely under Rule 4(a)(5) [4].

Except in truly extraordinary cases, Rule 60(b) relief should not be used to extend the time for appeal, and ... courts have regularly rejected efforts to use 60(b) in this way.... As noted, the appeal periods in Fed.R.App.P. 4 are mandatory and jurisdictional. Rule 4 also includes a means by which the period for appeal can be extended, and Rule 60(b) cannot be used to circumvent its procedures, which embody the significant principle of protecting the finality of judgments. This is particularly so where, *as here*, the Rule 60(b) motion is made after time for appeal has expired, and the movant neither complains of any denial of a full and fair hearing before the district court nor seeks by the motion to have the district court alter its ruling, but rather asks only that the order be vacated an reentered. In such a case, the Rule 60(b) motion is avowedly being used only to extend the time for appeal. It hence squarely collides with Rule 4(a)(5).

*United States v. O'Neil*, 709 F.2d 361, 373 (5th Cir.1983) (citations and footnote omitted); *see* C. Wright and A. Miller, 11 *Federal Practice and Procedure* § 2864 at 214–215 (West 1973).

■ Thus, attorney mistake or excusable neglect under Rule 60(b)(1) means more than "mere misjudgment or careless failure to evaluate". *O'Neil*, 709 F.2d at 373 (quoting *Chick Kam Choo v. Exxon Corp.*, 699 F.2d 693, 697 (5th Cir.1983)). And, even though the catch-all provision of Rule 60(b)(6) enables a district court to "vacate judgments whenever such action is appropriate to accomplish justice", *Klapprott v. United States*, 335 U.S. 601, 614–615, 69

---

4. Federal Rule of Appellate Procedure 4(a)(5) provides in pertinent part:

> The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expira-

tion of the time prescribed by this Rule 4(a).... No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

Fed.R.App.P. 4(a)(5) (West 1991).

S.Ct. 384, 390, 93 L.Ed. 266 (1949), it may only be applied in extraordinary circumstances, *Ackermann v. United States,* 340 U.S. 193, 199–202, 71 S.Ct. 209, 212–13, 95 L.Ed. 207 (1950). *See Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988).

■ As evidenced by this Court's Memorandum and Notice of Intention, the Court was inclined to grant TMT's request for Rule 60(b) relief based on principles of equity and justice, and what this Court perceived to be extraordinary circumstances. Factors cited by the Court were the punitive nature of the verdict [5] and the significant legal issues addressed in the case. The Court also had reason to believe that execution of the verdict would have catastrophic consequences for TMT.[6]

The Court also considered other factors which it believed supported equitable relief. At that time, Rule 60(b) relief would not have prejudiced either the appellate court or Zapata. Because the Court *denied* Zapata's motion for prejudgment interest, TMT's grounds for appeal would not change. Also, Zapata could not have justifiably relied on the finality of the original judgment. From the moment of the jury's verdict, and even before then, an appeal was virtually certain, and until TMT failed to file a second notice of appeal, TMT actively pursued its appeal. Additionally, most cases denying relief under Rule 60(b) involve circumstances where counsel failed to timely appeal due to counsel's lack of diligence.[7] In contrast, TMT's present predicament is not due to a lack of diligence, but a misinterpretation of a technical procedural issue. Considering these circumstances, the Court believed that the appeal should be heard on its merits, and that the Rule 60(b)'s equitable relief was available to avoid the harsh effect of Rule 4(a)(4).

When the Court issued its Memorandum and Notice of Intention, the Court was unaware of any cases discussing Rule 60(b) relief in the context of a Rule 59(e) motion.[8] The Court's independent research subsequent to issuing its Memorandum and Notice of Intention revealed two cases which compel it to decide that Rule 60(b) relief is not warranted in this case: *In re: Air Crash at Dallas/Fort Worth Airport,* 852 F.2d 842 (5th Cir.1988) and *Wilson v. Atwood Group,* 725 F.2d 255 (5th Cir.1984).[9]

---

5. Section 4 of the Clayton Act provides for treble damages at least in part for punitive purposes. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).

6. The Court is aware that the size of a judgment is insufficient to entitle a party to Rule 60(b) relief where it would not otherwise be available. *See Hunt v. BP Exploration Co. (Libya) Ltd.,* No. 84–1845, slip op. at 9 (5th Cir. Feb. 25, 1985) [756 F.2d 880 (table) ] (plaintiff was not entitled to Rule 60(b) relief from a judgment recognizing a $40 million foreign judgment where his attorney simply miscalculated the time for appeal). The Court's finding of extraordinary circumstances in its Memorandum and Notice of Intention was not based on the size of the verdict alone, but the fact that the award was punitive in nature and would likely have catastrophic consequences for TMT. Together with the other factors discussed herein, the Court believed the equities of the case justified 60(b) relief.

7. *See, e.g., Pryor v. U.S. Postal Service,* 769 F.2d 281 (5th Cir.1985); *Chick Kam Choo v. Exxon Corporation,* 699 F.2d 693 (5th Cir.1983).

8. Zapata cited *Campbell v. Bowlin,* 724 F.2d 484 (5th Cir.1984), describing it as a case in which the Fifth Circuit reversed the district court for extending the time to appeal on behalf of the plaintiff who failed to timely appeal due to a misunderstanding as to whether a post-trial motion for attorney's fees was a Rule 59(e) motion. This is a mischaracterization of the case. In fact, the court did not reach the propriety of the extension of time with respect to the appeal from the original judgment because it found that the plaintiff's appeal from the original judgment was effective on the ground that the post-trial motion for attorney's fees was *not* a Rule 59(e) motion. However, the plaintiff lost the right to appeal the attorney's fee issue by not filing an appeal after the district court decided that issue. The appellate court held that the plaintiff's ignorance of the fact that a separate appeal from the attorney's fee issue was necessary (because his first appeal was on the merits of the main demand only), was not excusable neglect under Fed.R.App.P. 4(a)(5). *See id.* at 488.

9. Neither party cited these cases to the district court, although Zapata cited *Wilson* in its appellate brief in opposition to TMT's motion to remand. In this regard, the Court notes that TMT's March 6, 1991 Motion for Relief From Judgment Under Rule 60(b) was scheduled on

The circumstances in *In Re: Air Crash Disaster at Dallas/Fort Worth Airport* are similar to the facts in the case at bar. In *Air Crash*, the defendant filed its only notice of appeal while the plaintiff's motion for new trial was pending. Subsequently, the district court entered a ruling denying the motion for new trial. The appellate court dismissed the defendant's appeal under Rule 4(a)(4) on the ground that the appeal was a nullity due to the fact that it was filed before the disposition of the plaintiff's motion for new trial. The defendant sought and was granted Rule 60(b) relief by the district court. The defendant argued that the plaintiff's counsel stated that he would withdraw the motion for new trial based on a stipulation the parties were in the process of making, but instead, he had the motion denied on its merits. The defendant argued that the motion should not have been denied on its merits, but dismissed as moot due to the parties' stipulation. The district court vacated its order denying the motion for new trial and entered a new order dismissing the motion for new trial on the ground of mootness. On the appeal from the new order, the appellate court noted that the sole purpose of the 60(b) motion was to extend the defendant's time for appeal and stated: "Given our firm rule of not allowing a 60(b) motion to substitute for an appeal, we must examine [the defendant's] reasons for the motion to determine whether this is an 'unusual case' that warrants such extraordinary relief." *Id.* at 844. Based on a plain reading of Rule 4(a)(4), the appellate court found the defendant's reasons inconsequential:

> It is undisputed that the motion was timely filed and [defendant] knew that. Rule 4(a)(4) specifically states that a new notice of appeal must be filed 'within the prescribed time measured from the entry of *the order disposing* of the motion' (emphasis added). Until the court acts on the motion, a notice of appeal cannot be effective. [The defendant's] argument that it relied on [the plaintiff's]

representation that it would withdraw the order is errant. No matter what [the plaintiff] did or did not do, [the defendant] could not file a notice of appeal until the court acted. The court had not acted when [the defendant] filed its June 19, notice of appeal. [The defendant's] claim that it was somehow tricked makes no sense; its idea that [the plaintiff's] counsel, acting alone, could dispose of the motion is incorrect. Likewise, it was inconsequential that the cover letter with the new trial motion made reference to submission to the court. The motion was filed. [The defendant's] only proper course was to await disposition by the court.

> . . . . . .

> [The defendant's] argument about the motion being denied on its merits instead of being moot is nonsensical. The time for the notice of appeal runs from 'disposition' of the motion for a new trial. The grounds for the court's disposition do not affect the present issue. Whether it was "denied" or "dismissed" does not, indeed, cannot, affect the appeal period. There would have been no difference if the July 8 order had said the motion was moot.

*Id.* at 845. The court held that while the circumstances argued by the defendant were "unique", they could not support Rule 60(b) relief because they were unrelated to the defendant's failure to file a timely appeal. *See id.* (quoting *Wilson v. Atwood,* 725 F.2d 255, 258 (5th Cir.) (en banc), *cert. dismissed,* 468 U.S. 1222, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984) ("unique circumstances do not excuse untimeliness when they are unrelated to counsel's failure to file the appeal").

The same reasoning applies to TMT in the case at bar. While the extraordinary circumstances cited in this Court's Memorandum and Notice of Intention unquestionably raise concerns of justice, it is also undeniable that none of those circumstances are related to TMT's failure to effectively appeal. Thus, the Court must

an expedited basis and argued to the Court on March 11, 1991, two workings days after it was filed. The Court issued its Memorandum and

Notice of Intention the next day, March 12, 1991.

examine whether there are any unusual circumstances related to TMT's failure to effectively appeal that can support Rule 60(b) relief.

TMT argues that it reasonably believed that an appeal subsequent to the Court's ruling on Zapata's motion for prejudgment interest was not necessary because the parties stipulated to enter a separate judgment on that motion, thereby preserving the finality of the prior Rule 54(b) judgment and the integrity of its appeal. Like the defendant in *Air Crash*, TMT overlooks the fact that regardless of whether the Court amended the Rule 54(b) judgment, and regardless of the parties' reasons for stipulating to enter a separate judgment on the Rule 59(e) motion, TMT's only notice of appeal never had any effect. No matter what the parties or the Court did in relation to the disposition of the motion for prejudgment interest, TMT's notice of appeal was ineffective. These circumstances have no bearing on TMT's filing an ineffective appeal and failing to file an appeal after the Court acted on the Zapata's motion.

TMT argues that it reasonably believed that Zapata's motion for prejudgment interest was a motion for sanctions rather than a Rule 59(e) motion because the motion was brought pursuant to § 4 of the Clayton Act, which allows for the imposition of prejudgment interest under circumstances akin to a Rule 11 violation. TMT cites the fact that Zapata's motion did not specify that it was a "Rule 59(e)" motion or that it was a "motion to alter or amend the judgment." While there certainly has been much debate and litigation on the question of what constitutes a Rule 59(e) motion, the Court is unaware of any decision where an attorney's failure to properly identify a Rule 59(e) motion supported Rule 60(b) relief. A reading of Rule 4(a)(4), together with *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989), in which the United States Supreme Court held that "a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)," would have revealed, at least, a potential flaw in TMT's appeal. In any event, if TMT was unsure whether the motion for prejudgment interest was a Rule 59(e) motion, it would have been easy enough for TMT to protect itself by filing a second notice of appeal after the Court acted on Zapata's motion for prejudgment interest.

The Fifth Circuit has consistently held that failure to read and understand the rules of appellate procedure do not constitute excusable neglect. *See Campbell v. Bowlin*, 724 F.2d 484, 488 (5th Cir.1984); *O'Neil*, 709 F.2d at 373. The cases where the Fifth Circuit affirmed the district court's entry of 60(b) relief involve more than an attorney's failure to properly interpret the law. The Fifth Circuit has approved Rule 60(b) relief where the failure to appeal was not due to a lack of diligence to ascertain the status of the case, and counsel relied on some express assurance of the district court that counsel would be notified of any decision, *see Fidelity and Deposit Company of Maryland v. USA-FORM Hail Pool, Inc.*, 523 F.2d 744, 747–51 (5th Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976), or reasonably believed that the court intended to delay entry of judgment, *see Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5, 8 (5th Cir.1970).

There is no evidence that TMT's failure to file an appeal after the Court acted on Zapata's motion for prejudgment interest was the result of fraud or some other reason beyond TMT's control. TMT was not misinformed or misled by anyone. Even assuming that TMT acted in good faith, that fact alone is insufficient to vacate and re-enter a judgment allowing TMT to perfect its appeal. *See O'Neil*, 709 F.2d at 373 (good faith mistake of attorneys in failing to timely appeal did not warrant relief under 60(b)(1) or (6)).

While the Court would like to see TMT have the benefit of appellate review, there is no doubt in the Court's mind that this case was fully and fairly tried, and that the jury's verdict is based on substantial evi-

dence.[10] After much soul searching and exhaustive legal research, the Court finds that TMT has failed to show any unusual or extraordinary circumstances related to its failure to file an effective notice of appeal. Pursuant to the authorities cited herein, the Court holds that TMT is not entitled to relief under Rule 60(b).

Accordingly,

IT IS ORDERED that Trailer Marine Transport Corporation's Motion for Entry of Relief Pursuant to Fed.R.Civ.P. 60(b) is DENIED.

## ON MOTIONS FOR RECONSIDERATION, FOR RELIEF FROM JUDGMENT AND ENFORCEMENT OF MANDATE

The Court addresses here (1) the motion of the defendant, Trailer Marine Transport Corporation (TMT), for reconsideration of the Court's order denying relief under Federal Rule of Civil Procedure 60(b)(6), (2) TMT's motion for relief pursuant to Federal Rule of Civil Procedure 60(b)(4) and 60(b)(5), and (3) the motion of the plaintiff, Zapata Gulf Marine Corporation (Zapata), to enforce the mandate and surety bond posted by TMT, or alternatively, to increase the amount of the surety bond pending TMT's appeal. For the reasons set forth below, the motions are DENIED.

### I.

The Fifth Circuit dismissed TMT's appeal of this Court's March 22, 1990 judgment for lack of jurisdiction on the ground that TMT's only notice of appeal was a nullity, having been filed during the pendency of Zapata's Rule 59(e) motion for prejudgment interest. *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority,* 925 F.2d 812 (5th Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). TMT subsequently sought to have this Court vacate the judg-

ment and enter a new judgment from which it could timely appeal. On July 5, 1991, this Court entered an order denying TMT's motion for relief under Rule 60(b)(1) and (6), relying in large part on two Fifth Circuit cases: *Wilson v. Atwood,* 725 F.2d 255 (5th Cir.) (en banc), *cert. dismissed,* 468 U.S. 1222, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984) and *In re: Air Crash at Dallas/Fort Worth Airport,* 852 F.2d 842 (5th Cir.1988).[1]

In seeking reconsideration of the Court's order denying relief under Rule 60(b)(6), TMT argues that *Wilson* and *In re: Air Crash* have no application in this case. TMT maintains that the holding in *Wilson*—that "unique circumstances do not excuse untimeliness when they are unrelated to counsel's failure to file the appeal"— does not apply in this case because *Wilson* is limited to situations involving the clerk's failure to provide notice of the entry of an order or judgment in accordance with Rule 77(d), citing *Prior Products, Inc. v. Southwest Wheel–NCL Co.,* 805 F.2d 543, 545 (5th Cir.1986). TMT argues that because *In re: Air Crash* was not a Rule 77(d) case, the Fifth Circuit improperly relied on *Wilson* in denying Rule 60(b) relief in *In re: Air Crash.* Thus, TMT concludes that this Court is not bound to follow *In re: Air Crash.*

TMT's position is without merit. The Court finds no limitation of *Wilson* in *Prior Products* or any other opinion. Moreover, in addition to *In re: Air Crash,* the Fifth Circuit applied *Wilson* in at least one other non-Rule 77(d) case: *Hunt v. BP Exploration Co. (Libya) Ltd.,* No. 84–1845, slip op. (5th Cir. Feb. 25, 1985) [756 F.2d 880 (table)]. In *Hunt,* the Court specifically stated that its decision in *Wilson* was not limited to an interpretation of Rule 77(d):

> We held [in *Wilson*] that delay caused by mere reliance on the clerk's duty un-

---

**10.** TMT brought to the Court's attention the recent Fifth Circuit opinion in *Amberg v. Federal Deposit Ins. Corp.,* 934 F.2d 681 (5th Cir.1991). In that case, the court reversed a default order entered by the Board of Directors of the FDIC, holding that FDIC abused its discretion in granting the order. *Id.* at 686–87. *Amberg* is distin-

guishable on several grounds, most significantly, the fact that the FDIC never considered the merits of the case.

**1.** The procedural background of this case is set forth in greater detail in the Court's July 5, 1991 Order and Reasons.

der rule 77(d) was unreasonable and thus did not justify intervention by the district court. While this conclusion necessarily was based in part on our construction of rule 77(d), our opinion also rested on the premise that, to be relieved under rule 60(b) from the effect of a judgment, a party must demonstrate something more than ignorance of the rules of federal procedure or one's responsibilities thereunder. [Footnote omitted].

*Id.* at 10–11. [756 F.2d 880 (table)]. TMT has not submitted any authorities which would relieve this Court's obligation to follow the Fifth Circuit's opinion in *In re: Air Crash,* a case which is substantially on point with the present case.

TMT also argues that it is entitled to Rule 60(b)(6) relief because its failure to file a timely appeal was due in part to a plausible misconstruction of the law, as opposed to mere carelessness, citing *Lorenzen v. Employees Retirement Plan of The Sperry & Hutchinson Co., Inc.,* 896 F.2d 228 (7th Cir.1990) and *Feeder Line Towing Serv., Inc. v. Toledo, Peoria & W. R.R. Co.,* 539 F.2d 1107 (7th Cir.1976). *Lorenzen* and *Feeder Line Towing* were not decided under Rule 60(b), but under Federal Rule of Appellate Procedure 4(a)(5), which allows a district court, upon a showing of excusable neglect or good cause, to extend the time for filing an appeal, if a motion for extension of time is filed not later than thirty days after the expiration of the original appeal time. In both *Lorenzen* and *Feeder Line Towing,* the appellant timely filed a motion for extension of time under Rule 4(a)(5), whereas, in the case at bar, TMT sought relief solely under Rule 60(b) long after the thirty-day period allowed under Rule 4(a)(5). Considering that relief under Rule 4(a)(5) is available only for thirty days after the appeal period has passed, and that relief under Rule 60(b)(1) is available for one year after the judgment, or even longer under Rule 60(b)(6), the standard for relief is necessarily more restrictive under Rule 60(b). "It is evident that a somewhat more stringent test must govern petitions for relief under Rule 60(b); were

this not so, the binding time constraints imposed by Rule 4(a)(5) would be completely eroded by the open-ended relief offered by Rule 60(b)." *In re: O.P.M. Leasing Services, Inc.,* 769 F.2d 911, 918–19 (2d Cir.1985) (quoting *Mennen Co. v. Gillette Co.,* 719 F.2d 568, 570 n. 5 (2d Cir.1983)). Thus, neither *Lorenzen* nor *Feeder Line Towing* apply to this case.

TMT suggests that the parties' stipulation to entry of a separate judgment on Zapata's motion for prejudgment interest reinforced its belief that the motion was not a Rule 59(e) motion and that a second notice of appeal would not be necessary. There is no evidence that anyone led TMT to believe that its first appeal was effective. Based on the parties' written correspondence, this was TMT's independent belief. Thus, while the parties' agreement to enter a separate judgment may have reinforced TMT's misconception, it does not constitute an extraordinary circumstance justifying relief under Rule 60(b)(6). *See In re: Air Crash,* 852 F.2d at 845.

### II.

■ TMT argues that it is entitled to relief under Rule 60(b)(5) and 60(b)(6) because the recent United States Supreme Court opinion in *City of Columbia v. Omni Outdoor Advertising,* —— U.S. ——, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), establishes that Zapata has no cause of action against TMT because TMT is immune from antitrust liability under a doctrine known as *Noerr* immunity.[2] *Noerr* immunity protects private parties from antitrust liability in lobbying for anticompetitive action from the government. *Id.* at 1354.

In *Omni Outdoor Advertising,* the Supreme Court held that Columbia Outdoor Advertising was immune under *Noerr* from antitrust liability for its activities in lobbying the Columbia city council for an anticompetitive zoning ordinance that served to its benefit. The Supreme Court rejected a conspiracy exception to *Noerr* immunity, which several circuits, including the Fifth

---

**2.** The doctrine of *Noerr* immunity originated in *Eastern Railroad Presidents Conference v. Noerr* *Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

Circuit,[3] had recognized. *Id.* at 1355. The Supreme Court held that Columbia Outdoor Advertising was entitled to immunity only insofar as its activities in seeking anticompetitive action from the government, and expressly left open the possibility that Columbia Outdoor Advertising might be liable for its private anticompetitive activities. *Id.* at 1356.

Prior to trial in the case at bar, the Court ruled that the Puerto Rico Maritime Shipping Authority (PRMSA) had state action immunity under *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), for its allegedly anticompetitive activities performed pursuant to a legislatively mandated policy to displace competition. Thereafter, TMT moved for dismissal on the ground that it also was entitled to state action immunity because its conduct was in reaction to and in furtherance of Puerto Rico's policy. TMT argued that due to PRMSA's role as market leader, PRMSA was the "effective decision-maker" in the challenged conduct such that TMT's conduct also was protected. This is not a *Noerr* immunity argument. *Noerr* immunity arises in the context of an individual's activities in seeking an anticompetitive benefit from the political process. *Omni Outdoor Advertising,* 111 S.Ct. at 1354.

This Court denied TMT's motion for summary judgment on the ground that there was no evidence that PRMSA was the effective decision-maker, or that it actively regulated or supervised TMT's conduct. The conspiracy exception to *Noerr* immunity was not raised by the parties, nor was it a basis for the Court's decision. In any event, *Noerr* immunity does not apply to TMT. In the case at bar, the jury found TMT liable for anticompetitive conduct in the private market.

With respect to TMT's argument that it is entitled to relief under Rule 60(b)(4) because Zapata's suit was barred by the filed rate doctrine as interpreted by the Sixth

Circuit in *Pinney Dock & Transport Co. v. Penn Central Corp.,* 838 F.2d 1445 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), TMT offers no new facts or legal authority to warrant changing this Court's prior decision not to follow *Pinney Dock.*

### III.

■ Zapata seeks to have the Court enforce the mandate and allow it to execute on the March 22, 1990 judgment, or alternatively, to increase the amount of TMT's surety bond. After entry of the March 22, 1990 judgment, the Court held several conferences with the parties and Special Master, Barry Mabry, CPA, to fix the security for the judgment pending TMT's appeal. The Court and the Special Master reviewed *in camera* numerous financial documents from TMT and its parent, Crowley Maritime Corporation. It was apparent that posting a bond for 120% of the $41 million judgment would impose an undue financial burden on TMT. Eventually, the parties reached an agreement for substitute security consisting of a $20 million bond, an unconditional guarantee for the full amount of the judgment plus interest, attorneys' fees and costs from TMT's parent, Crowley Maritime Corporation, and a consent judgment for the full amount of the judgment, plus interest, attorneys' fees and costs from Crowley. The agreement included TMT's dismissal of all of its counterclaims and third-party claims. In addition, TMT agreed to give the following documents to a designated official at Zapata: (1) the Annual Financial Statements[4] of Crowley and its consolidated subsidiaries for the preceding calendar year; (2) an Audit Opinion pertaining to the Annual Financial Statements; and (3) the Interim Financial Statements[5] of Crowley and its consolidated subsidiaries for the preceding calendar quarter. The Court determined

---

**3.** *See e.g., Affiliated Capital Corporation v. City of Houston,* 735 F.2d 1555 (5th Cir.1984) (en banc).

**4.** The consolidated balance sheet for the relevant calendar year and the related consolidated

statements of income, retained earnings, and cash flows.

**5.** The consolidated balance sheet for the relevant calendar quarter and the related statement of income.

that the parties' agreement provided Zapata adequate protection and approved the agreement. *See Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir.1979).

■ Zapata now argues that the security is inadequate, yet it is the same security to which it agreed a year ago. Zapata has received the annual and quarterly statements from Crowley and its consolidated subsidiaries, but does not allege that there are any changed circumstances in Crowley's financial condition to indicate that Zapata's interests are jeopardized. Although interest is accruing at the rate of approximately $10,000 per day, Crowley's guarantee and consent judgment includes interest, as well as attorneys' fees and costs. A stay under Rule 62 is automatic where the judgment is for money and the party taking an appeal posts a bond in accordance with Rule 62(d).[6] *See Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting–Paramount Theatres, Inc.*, 87 S.Ct. 1, 17 L.Ed.2d 37 (1966). Having posted bond and other security adequate to protect Zapata, TMT is entitled to a stay of execution.

Accordingly,

IT IS ORDERED that:

1) Trailer Marine Transport Corporation's Motion for reconsideration of Fed. R.Civ.P. 60(b)(6) relief and Motion for Relief Pursuant to Fed.R.Civ.P. 60(b)(4) and 60(b)(5) is DENIED.

2) Zapata Gulf Marine Corporation's Motion to Enforce Mandate and Surety Bond, or Alternatively, to Increase the Amount of the Surety Bond is DENIED.

3) Execution of the March 22, 1990 judgment is STAYED pending further orders of the Court. The bond and alternate security previously posted by Trailer Marine Transport Corporation on the March 22, 1990 judgment shall remain in effect pending further orders of the Court.

---

**6.** Zapata cited a four-factor test for determining whether a stay is warranted: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. This test applies where the judgment is for other than money or where the interests of the non-appealing party cannot be compensated monetarily. *See e.g., Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987).