19-3370-cv
*Alexander v. Saul, Comm'r of Soc. Sec.*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2020
No. 19-3370-cv

**MARION ALEXANDER,**
*Plaintiff-Appellant,*

v.

**ANDREW SAUL,**
**COMMISSIONER OF SOCIAL SECURITY,**
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of New York

---

ARGUED: JANUARY 12, 2021
DECIDED: JULY 8, 2021

---

Before:     PARK and MENASHI, *Circuit Judges.*[*]

---

[*] Judge Robert A. Katzmann, originally a member of the panel, died on June 9, 2021. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457, 458-59 (2d Cir. 1998).

Plaintiff-Appellant Marion Alexander, an applicant for Supplemental Security Income benefits, appeals from the judgment of the U.S. District Court for the Northern District of New York (Stewart, M.J.) denying her motion for an extension of time to file an appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5). Alexander argues that because of her mental impairments, she established both "good cause" and "excusable neglect" under Rule 4(a)(5) for her failure to file a timely appeal and accordingly contends that the district court abused its discretion in denying her motion for an extension.

We conclude that "excusable neglect," rather than "good cause," is the appropriate standard for evaluating Alexander's claim because her failure timely to appeal was at least in part due to her own inadvertence. In evaluating claims of "excusable neglect" under Rule 4(a)(5), courts consider the four factors set forth by the Supreme Court in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993): the risk of prejudice to the non-movant; the length of the movant's delay and its impact on the proceedings; the reason for the delay, including whether it was within the movant's reasonable control; and whether the movant acted in good faith. The district court applied these factors to Alexander's claim and concluded that she failed to demonstrate excusable neglect. Because we discern no abuse of discretion in the district court's application of the *Pioneer* factors, we **AFFIRM** the judgment of the district court.

———————

2

MARK SCHNEIDER, Law Offices of Mark Schneider, Plattsburgh, New York, *for Plaintiff-Appellant*.

DANIELLA M. CALENZO, Special Assistant U.S. Attorney (Ellen E. Sovern, Regional Chief Counsel—Region II, Office of the General Counsel, U.S. Social Security Administration, *on the brief*), *for* Grant C. Jacquith, U.S. Attorney, Northern District of New York, Syracuse, New York, *for Defendant-Appellee*.

Katherine Burghardt Kramer, Middlebury, Vermont, *for Amicus Curiae National Alliance on Mental Illness of Champlain Valley, in support of Plaintiff-Appellant*.

Victoria M. Esposito, Albany, New York, *for Amicus Curiae Legal Aid Society of Northeastern New York, Inc., in support of Plaintiff-Appellant*.

MENASHI, *Circuit Judge*:

Plaintiff-Appellant Marion Alexander appeals from the district court's denial of her motion for an extension of time to file an appeal. Alexander filed suit in federal court against the Commissioner of Social Security under 42 U.S.C. § 405(g), seeking review of the Commissioner's denial of her claim for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* While the district court's decision was pending, Alexander moved out of her mother's house and failed to provide her counsel with updated contact information. As a result, she did not receive notice of the district court's decision denying her benefits claim until two days after the deadline to notice an appeal had passed. Alexander filed a motion with the district court under Federal Rule of

3

Appellate Procedure 4(a)(5) for leave to file an untimely appeal. The Commissioner opposed the motion.

Under Federal Rule of Appellate Procedure 4(a)(5), a district court "may extend the time to file a notice of appeal if … th[e] party [seeking an extension] shows excusable neglect or good cause." The "good cause" standard applies when the need for an extension arises from factors outside the control of the movant; the "excusable neglect" standard applies when the need for an extension results from factors within the movant's control. The district court denied Alexander's motion, holding that she established neither "good cause" nor "excusable neglect" for her failure to file a timely appeal. We review that decision for abuse of discretion and will reverse only if we are left with "a definite and firm conviction that the court below committed a clear error of judgment" in reaching its decision. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 362 (2d Cir. 2003).

Because Alexander's failure to appeal in a timely fashion was at least partially due to her own inadvertence, "excusable neglect," rather than "good cause," is the appropriate standard for assessing her claim. To determine whether a litigant has established "excusable neglect" under Federal Rule of Appellate Procedure 4(a)(5), courts consider the four factors set forth by the Supreme Court in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). Those factors are: "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* at 395. Because "[t]he requirement of filing a timely notice of appeal is 'mandatory

4

and jurisdictional,'" *Bowles v. Russell*, 551 U.S. 205, 207 (2007), we have "taken a hard line in applying the *Pioneer* test," *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005) (internal quotation marks omitted), explaining that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose," *id.* at 123.

While we are sympathetic to Alexander's case, we cannot conclude that the district court committed an abuse of discretion in holding that Alexander failed to meet this demanding standard. The district court reasonably applied the *Pioneer* factors and held that because Alexander's untimely appeal was caused by her failure to maintain contact with her attorney—a factor within her reasonable control—she failed to establish excusable neglect under the *Pioneer* test. While Alexander attributes her delay to her mental illness, which she argues is beyond her control, the record does not compel the conclusion that Alexander's impairments as opposed to her neglect caused her failure timely to appeal. We accordingly affirm the judgment of the district court.

## BACKGROUND

Plaintiff-Appellant Marion Alexander began receiving Supplemental Security Income ("SSI") benefits from the Social Security Administration in 2005 but lost her benefits when she was incarcerated for grand larceny in 2011. Upon her release from prison, Alexander reapplied for SSI benefits, alleging disability due to attention-deficit/hyperactivity disorder, post-traumatic stress disorder, bipolar disorder, chronic hip and back pain, degenerative disc disease, and hepatitis C. Her application was denied.

5

Proceeding *pro se*, Alexander requested and received a hearing on her claim before an Administrative Law Judge ("ALJ"). The ALJ applied the required five-step sequential evaluation process to determine whether Alexander was "disabled" within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(a). Pursuant to that process, the ALJ first determines whether the applicant is engaged in "substantial gainful activity." *Id.* § 416.920(a)(4)(i). If the applicant is engaged in such activity, the applicant will not be found to be disabled. *Id.* If the applicant is not engaged in "substantial gainful activity," the ALJ then determines whether the applicant has "a severe medically determinable physical or mental impairment" or a "combination of impairments" that has lasted or is expected to last for a continuous period of at least twelve months. *Id.* § 416.920(a)(4)(ii); *see id.* § 416.909. If the applicant does not suffer from any such impairment or combination of impairments, the applicant will not be found to be disabled. *Id.* § 416.920(a)(4)(ii). If the applicant does suffer from such impairments, the ALJ then "consider[s] the medical severity" of the applicant's "impairment(s)." *Id.* § 416.920(a)(4)(iii).

If the applicant has an impairment or combination of impairments persisting for at least twelve months "that meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter," the applicant will be found to be disabled. *Id.* If the applicant's impairments do not meet or equal a listing, the ALJ will assess the applicant's "residual functional capacity" ("RFC") and the applicant's "past relevant work." *Id.* § 416.920(a)(4)(iv). If the applicant can perform past relevant work, the applicant will not be found to be disabled. *Id.* If the applicant cannot perform past relevant work, the ALJ will consider whether, in light of the applicant's RFC, age, education, and work experience, the applicant can "make an

6

adjustment to other work." *Id.* § 416.920(a)(4)(v). If the applicant is not able to make an adjustment to other work, the applicant will be found to be disabled. *Id.*

Applying this process to Alexander, the ALJ found that Alexander had not engaged in substantial gainful activity since submitting her application for benefits and that she suffered from significant impairments, including hepatitis C, bipolar disorder, post-traumatic stress disorder, and opioid dependence. The ALJ further found, however, that these impairments were not so severe as to meet or medically equal any "listing." Finding that Alexander had sufficient RFC to perform unskilled, light work and that there were jobs existing in significant numbers in the national economy that Alexander could perform, the ALJ concluded that Alexander would be able to make a successful adjustment to other work and concluded that she was not disabled within the meaning of the Social Security Act. The ALJ accordingly denied Alexander's claim for SSI benefits.

Alexander retained counsel and filed an appeal with the Social Security Appeals Council, which denied her request for review. Alexander then filed a civil suit against the Commissioner of Social Security in the U.S. District Court for the Northern District of New York, seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The district court held that the ALJ violated his duty to develop the record in Alexander's case by failing to include in the record Alexander's SSI file from the period before her benefits were terminated. Noting that "'the existence of a prior established disability is highly relevant when the nature of that disability appears to be the very same cause of the alleged disability then under examination,'" the district court concluded that there were too many

"outstanding questions" about Alexander's case to render a decision on her benefits claim. R. 540 (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)) (alteration omitted).[1] The district court thought those questions—whether Alexander had received benefits, why those benefits had been terminated, and why Alexander's prior file was not included in the record—needed "further review and explanation." *Id.* at 541. The district court reversed the Commissioner's decision and remanded the case to the Social Security Administration "for further development of the record." *Id.*

On remand, the ALJ conducted two further hearings and considered additional evidence regarding Alexander's alleged impairments. The ALJ again concluded that Alexander was not disabled within the meaning of the Social Security Act. Although the ALJ acknowledged his responsibility to complete the administrative record and made efforts to locate Alexander's previous SSI file, he was unable to find it. The ALJ's decision denying benefits became the final decision of the Commissioner.

Alexander returned to the district court for review of the Commissioner's decision. In accordance with the briefing schedule set by the district court, Alexander timely filed a motion for judgment on the pleadings. The Commissioner's cross-motion for judgment on the pleadings was due on June 19, 2018. The Commissioner did not file a motion by that date. On July 12, 2018—more than three weeks after the Commissioner's motion was due—the Commissioner filed a

---

[1] "R." indicates a citation to the administrative record before the district court, which has been designated as the record on appeal. *See* Social Security Administrative Record / Transcript, *Alexander v. Saul*, No. 8:17-CV-01361 (N.D.N.Y. Dec. 15, 2017), ECF No. 9.

letter-motion seeking an extension of time from the district court for "Good Cause." Special App'x 12. Counsel for the Commissioner explained that "the undersigned miscalculated the due date of her response" and as a result "missed this deadline." *Id.* The Commissioner requested a thirty-day extension, to August 10, 2018, to file the motion. Alexander's counsel consented to the request, which the district court granted.

On the day that the Commissioner's motion was due, the Commissioner filed a letter seeking another extension. Citing "the undersigned's heavy workload," the Commissioner's counsel stated that "she was unable to finalize the brief in time" and requested a fourteen-day extension, to August 24, 2018, to file the motion. *Id.* at 14. The district court granted the extension, and the Commissioner filed the motion on August 24, 2018—more than two months after it was originally due.

Approximately seven months after the motions were submitted, the district court issued its decision.[2] The district court first analyzed Alexander's argument that the ALJ was required to presume that Alexander remained disabled following the termination of her benefits in the absence of evidence that her disabling conditions had improved. The district court concluded that the ALJ did not need to make that presumption because Alexander was required to file— and did file—a new application for SSI benefits upon her release from prison that was subject to a *de novo* determination of benefits eligibility. The district court next discussed its remand order and held

---

[2] The decision was issued by a magistrate judge exercising the authority of the district court pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

9

that the ALJ fulfilled his duty to develop the record notwithstanding his failure to locate Alexander's previous SSI file. Noting the ALJ's "sincere efforts" to locate the file as well as his prompting of testimony from Alexander concerning her incarceration and termination of benefits, the district court concluded that any gaps in the record "would no longer prevent the Court from assessing the other errors claimed by Plaintiff." Special App'x 46-48. The district court accordingly concluded that further remand was "not required" to evaluate Alexander's claim. *Id.* at 48.

Turning next to the merits, the district court affirmed the Commissioner's benefits decision, holding that it was supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (explaining that under the "substantial evidence" standard, the Commissioner's decision "must be upheld" if there is "such relevant evidence as a reasonable mind might accept as adequate to support [the Commissioner's] conclusion"). Rejecting Alexander's "invitation to reweigh the evidence which was before the ALJ," the district court held that the ALJ "properly considered the evidence of record and provided analysis supporting his finding[]" that Alexander "has the RFC to perform a modified range of unskilled light work." Special App'x 52-9. The district court also accepted the ALJ's finding that Alexander's "statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record," noting that the ALJ found "limited substantive support for Plaintiff's allegations of disabling symptomology" in light of Alexander's "generally benign examination results" and ability to partake in "daily activities [that] were inconsistent with allegations of disability." *Id.* at 64-65. Finally, the district court held that the ALJ's

determination that Alexander can perform work existing in substantial numbers in the national economy was also supported by substantial evidence. The district court therefore denied Alexander's motion for judgment on the pleadings and granted the Commissioner's.

While the district court's decision was pending, Alexander's mother died, and Alexander moved out of her mother's house, where she had been living. Alexander failed to provide her counsel with her new address or a phone number at which she could be reached. When the district court's decision was issued, Alexander's counsel tried contacting Alexander but her phone number was disconnected. He tried calling several of Alexander's relatives, but none of them were able to tell him where Alexander was living. He mailed a letter to Alexander's last known address—her mother's house—informing her of the district court's decision and recommending that she pursue an appeal. The letter was returned as undeliverable by the Postal Service.

The district court's judgment was entered on March 28, 2019. Because Alexander's suit was against the Commissioner of Social Security, "a United States officer or employee sued in an official capacity," Alexander had sixty days, rather than the customary thirty, to appeal from the district court's judgment. Fed. R. App. P. 4(a)(1)(B)(iii). On May 29, 2019, two days after the deadline had passed, Alexander called her attorney to inquire into the status of her case. Alexander's counsel informed her that the district court had denied her claim, and Alexander decided to pursue an untimely appeal. Her counsel promptly noticed an appeal to this court and filed an *ex parte* letter-motion with the district court moving for additional time to appeal from the district court's decision under Federal Rule of

Appellate Procedure 4(a)(5), which permits a district court to "extend the time to file a notice of appeal if … th[e] party [seeking an extension] shows excusable neglect or good cause." The motion argued that an extension was warranted because Alexander "did not receive *actual* notice of [the district court's] Decision until today" and attributed Alexander's "lack of diligence" to "her severe mental illness." Special App'x 16. Alexander's counsel subsequently submitted a letter-brief in further support of his position. The Commissioner filed a brief opposing the motion.

The district court (Stewart, M.J.) denied Alexander's motion. In reaching its decision, the district court applied the factors identified by the Supreme Court in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), for determining whether a litigant has established "excusable neglect" under Federal Rule of Appellate Procedure 4(a)(5). Those factors are "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* at 395. While noting that the first, second, and fourth *Pioneer* factors favored Alexander, the district court placed the greatest emphasis on the third factor—"the reason for the delay, including whether it was within the reasonable control of the movant." *Id.* Finding that "it was entirely within Plaintiff's control to keep her attorney up to date on how to contact her" and that "[i]f she had done so, counsel presumably would have been able to communicate with her and timely file an appeal," the district court concluded that Alexander's failure to maintain contact with her attorney was "no basis for finding good cause or excusable neglect." Special App'x 9-10.

12

The district court rejected the suggestion that Alexander's lack of diligence could be attributed to her mental illness, finding that explanation "entirely conclusory … [and] insufficient to establish either good cause or excusable neglect." *Id.* at 10. The district court denied Alexander's motion for an extension of time to appeal from its judgment. This appeal followed.

## DISCUSSION

We review a district court's refusal to grant an extension of time to file a notice of appeal under Federal Rule of Appellate Procedure 4(a)(5) for abuse of discretion. *Goode v. Winkler*, 252 F.3d 242, 245 (2d Cir. 2001). "Such an order 'cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors.'" *Silivanch*, 333 F.3d at 362.

## I

Federal Rule of Appellate Procedure 4(a)(5) provides that a district court "may extend the time to file a notice of appeal" if the party seeking an extension "shows excusable neglect or good cause." "The good cause and excusable neglect standards have 'different domains'" and are "not interchangeable." Fed. R. App. P. 4(a)(5) Advisory Committee's Notes to 2002 Amendments (quoting *Lorenzen v. Emps. Ret. Plan*, 896 F.2d 228, 232 (7th Cir. 1990)). "The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant." *Id.* The "good cause" standard, in contrast, "applies in situations in which there is *no fault*—excusable or otherwise," such as when "the Postal Service fails to deliver a notice to appeal." *Id.* (emphasis added). In no-fault

13

circumstances, "good cause" is the appropriate standard because "[i]t may be unfair to make … a movant prove that its 'neglect' was excusable, given that the movant may not have been neglectful at all." *Id.* To establish good cause, the movant must therefore show that "the need for an extension is … occasioned by something that is not within the control of the movant." *Id.*

Because the "good cause" standard applies only "in situations in which there is no fault," *id.*, it "requires a greater showing than 'excusable neglect,'" *Broitman v. Kirkland (In re Kirkland)*, 86 F.3d 172, 175 (10th Cir. 1996). As the Supreme Court explained in *Pioneer*, "[t]he ordinary meaning of 'neglect' … encompasses … omissions caused by carelessness." 507 U.S. at 388. "The plain meaning of the phrase 'good cause,'" however, "has no such connotation." *Kirkland*, 86 F.3d at 175. Courts have accordingly declined to apply the "good cause" standard in cases in which the movant's failure to prosecute a timely appeal was at least partially attributable to the movant's own inadvertence.[3]

---

[3] *See, e.g.*, *United States v. Darling*, 706 F. App'x 34, 35 (2d Cir. 2017) ("Because Darling's failure to file his notice of appeal was not due to circumstances beyond his control, we conclude that the 'good cause' standard does not apply."); *Kanoff v. Better Life Renting Corp.*, 350 F. App'x 655, 657 n.1 (3rd Cir. 2009) ("[T]he 'good cause' prong is reserved for events over which the filing party has no control."); *Gibbons v. United States*, 317 F.3d 852, 853-54 & n.3 (8th Cir. 2003) (finding "no allegations in this case that would support a good cause finding" where the attorney's failure to meet the deadline was due in part to illness and in part to inadvertence); *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 630 (1st Cir. 2000) ("An illustrative case [of good cause] is … a case in which the putative appellant's tardiness in filing a notice of appeal result[s] entirely from external causes."); *Jin v. Metro. Life Ins. Co.*, No. 95-CV-4427, 2003 WL 21436211, at *2 (S.D.N.Y. June 20, 2003) (concluding that "the governing standard is 'excusable neglect'

Alexander argues that a finding of "good cause" would be appropriate in this case because "her mental illness is not within her control." Reply Br. 1. While it may be true that Alexander has no control over her mental condition, "good cause" is not the appropriate standard by which to judge her claims because her failure to meet the appeal deadline did not arise from a "situation[] in which there [was] *no fault*" or in which she was "not … neglectful *at all*." Fed. R. App. P. 4(a)(5) Advisory Committee's Note to 2002 Amendments (emphasis added). Alexander's failure to provide her attorney with updated contact information is not comparable to the Postal Service failing to deliver a notice of appeal or other "circumstances beyond [her] control." *United States v. Darling*, 706 F. App'x 34, 35 (2d Cir. 2017). Because Alexander's failure to file a timely appeal was at least partly due to her own "inadvertence, mistake, or carelessness," *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (quoting *Pioneer*, 507 U.S. at 388), excusable neglect, rather than good cause, is the appropriate standard for evaluating her claims.

## II

"The burden of proving excusable neglect lies with the late-claimant." *In re Enron Corp.*, 419 F.3d at 121. In deciding whether a movant has carried this burden, courts consider the four factors set forth by the Supreme Court in *Pioneer*: "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and

---

rather than 'good cause'" where the failure to meet the deadline was attributable to the client's loss of contact with her attorney), *aff'd*, 88 F. App'x 456 (2d Cir. 2004).

[4] whether the movant acted in good faith." 507 U.S. at 395. Because "the requirement of filing a timely notice of appeal is 'mandatory and jurisdictional,'" *Bowles*, 551 U.S. at 207, we have "'taken a hard line' in applying the *Pioneer* test" for excusable neglect, explaining that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose," *In re Enron Corp.*, 419 F.3d at 122-23; *see also Pioneer*, 507 U.S. at 392 ("[I]gnorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.").

Here, Alexander did not comply with the "entirely clear" rule that she was required to notice her appeal within sixty days of the district court's entry of judgment. *In re Enron Corp.*, 419 F.3d at 123; *see* Fed. R. App. P. 4(a)(1)(B)(iii).[4] We would therefore expect, "in the ordinary course," that Alexander would not prevail on her motion for an extension. *In re Enron Corp.*, 419 F.3d at 123. The district court reasonably applied the *Pioneer* factors, holding that because the reason for Alexander's delay was her failure to maintain contact with counsel—a factor within her reasonable control—she failed to

---

[4] Time limits contained in the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure are ordinarily not jurisdictional because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004); *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978) ("[I]t is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."). Accordingly, "where … the relevant time prescription is absent from the U.S. Code … the time prescription is not jurisdictional." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 21 (2017). The sixty-day deadline to appeal from a judgment against "a United States officer or employee sued in an official capacity," Fed. R. App. P. 4(a)(1)(B)(iii), is codified at 28 U.S.C. § 2107(b)(3). Thus, the deadline at issue in this case is jurisdictional. *See Bowles*, 551 U.S. at 213.

establish excusable neglect. While Alexander argues that her delay was caused by her mental illness, which she argues is not within her control, the record does not compel that conclusion. We therefore discern no abuse of discretion in the district court's decision to deny Alexander's motion for an extension of time to file an appeal.

**A**

In applying the *Pioneer* factors to Alexander's motion, the district court found that the first, second, and fourth factors all favored granting Alexander's motion for an extension. We agree: the Commissioner did not suffer meaningful prejudice from Alexander's delay, the length of her delay was short, and nothing in the record indicates that Alexander acted in bad faith. *See Pioneer*, 507 U.S. at 395. As is often the case, these factors favored granting Alexander's motion. *See Silivanch*, 333 F.3d at 366 ("In the typical case, the first two *Pioneer* factors will favor the moving party … [a]nd rarely in the decided cases is the absence of good faith at issue.").

The district court nevertheless held that Alexander failed to establish excusable neglect based on its analysis of the third factor: "the reason for the delay, including whether it was within the reasonable control of the movant." *Pioneer*, 507 U.S. at 395. Affording dispositive weight to that factor accords with our precedents, which have described the reason for the delay as the most important *Pioneer* factor. *See Dixon v. New York*, 737 F. App'x 46, 48 (2d Cir. 2018); *Shumsker v. Citigroup Glob. Mkts. Inc.*, 569 F. App'x 16, 18 (2d Cir. 2014); *In re Enron Corp.*, 419 F.3d at 123; *Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 418 (2d Cir. 2004). Indeed, "we … have focused on … 'the reason for the delay, including whether it was within the reasonable control of the movant'" despite "the existence of the four-

17

factor test in which three of the factors usually weigh in favor of the party seeking the extension." *Silivanch*, 333 F.3d at 366. Several of our sister circuits follow the same approach.[5]

Alexander's counsel proffered two explanations for her delay. First, he stated that Alexander "did not receive *actual* notice of [the district court's] Decision" until two days after the appeal deadline had passed because "[s]he moved out of her mother's house last year … [and] failed to give me her new address and phone number." Special App'x 16. Second, he "attribute[d] [Alexander's] lack of diligence to her severe mental illness." *Id.*

The district court did not abuse its discretion in holding that these explanations did not establish excusable neglect. "We identify nothing in the purposes or history of Rule 4(a) to suggest that a neglectful litigant should be able to sidestep the rigorous requirements of Rule 4(a)(5) … simply because [her] neglect led also to the failure to receive notice of the judgment." *Commc'ns Network*

---

[5] *See United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (describing the reason for the delay as the "foremost *Pioneer* consideration"); *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) ("[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect was excusable."); *Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) ("[T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. … [T]he reason-for-delay factor will always be critical to the inquiry."); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) ("[A]t the end of the day, the focus must be upon the nature of the neglect."); *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir. 1996) ("The most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure to file the notice of appeal.").

*Int'l, Ltd. v. MCI WorldCom Commc'ns, Inc. (In re WorldCom, Inc.)*, 708 F.3d 327, 338 (2d Cir. 2013). While Alexander may not have received "actual notice" of the district court's decision until after the deadline to appeal had passed, it was Alexander's own failure to provide her attorney with updated contact information that caused her to miss the deadline. [6] Such a failure, even when inadvertent, "does not constitute 'excusable neglect' as defined by *Pioneer* and subsequent cases." *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12-CV-1674, 2013 WL 5405699, at *4 (S.D.N.Y. Sept. 23, 2013); *see also Asbestos Pers. Injury Plaintiffs v. Travelers Indemn. Co. (In re Johns-Manville Corp.)*, 476 F.3d 118, 124 (2d Cir. 2007) ("[A]bsent extraordinary circumstances … inadvertence is not excusable neglect."). Our court and the district courts in our circuit have rejected claims of excusable neglect from litigants who missed deadlines because they failed to keep their

---

[6] Alexander's counsel contends that because Alexander's motion for an extension stated that she "had to move after her mother died, … had no forwarding address, and … had no phone number," the motion should have "raise[d] the inference that she was … homeless and 'couch surfing' during this period" and that "[u]nder the circumstances, the [district] court had an obligation to further inquire and have a hearing if it needed more evidence regarding Ms. Alexander's reason for missing the deadline." Appellant's Br. 36 n.30. We disagree. The motion stated that Alexander "failed to give me her new address and phone number" and that Alexander "should have communicated her new address and phone number to me." Special App'x 16. The motion therefore did not raise the inference that Alexander was homeless because it implied that Alexander had a "new address and phone number." *Id.* More fundamentally, it was counsel's job to explain to the district court's satisfaction why Alexander merited an extension from the appeal deadline. It was not incumbent upon the district court *sua sponte* to order an evidentiary hearing based on inferences it purportedly should have drawn from Alexander's motion.

19

counsel, the court, or other parties apprised of their contact information.[7]

The district court also did not abuse its discretion in concluding that Alexander failed to demonstrate excusable neglect based on her allegations of "severe mental illness." Special App'x 16. We do not rule out the possibility that a severely disabled SSI claimant could satisfy Rule 4(a)(5)'s excusable neglect standard by virtue of the claimant's disability. But the record does not compel the conclusion that Alexander's disabilities are so debilitating as to excuse her failure to prosecute a timely appeal.

---

[7] *See, e.g.*, *Pollard v. Does*, 452 F. App'x 38, 40 (2d Cir. 2011) (declining to find excusable neglect for a *pro se* plaintiff who "failed to comply with the court's … order to maintain a current address with the *pro se* office"); *Bergamo v. CFTC*, 192 F.3d 78, 80 (2d Cir. 1999) (holding that the excusable neglect standard was not satisfied where the plaintiff "claim[ed] that he did not receive [notice of the court's order] because, due to a … bank foreclosure on his property, he was no longer living at the address of record"); *Maduakolam v. Colum. Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) (rejecting a claim of excusable neglect where the plaintiff failed to "leav[e] a forwarding address or otherwise stay[] in contact with his counsel to assure that he received and responded to the court-ordered discovery schedule"); *Young v. Dep't of Corr.*, No. 2:16-CV-143, 2017 WL 4286305, at *2 (D. Vt. Aug. 23, 2017) ("[C]ourts have generally held that a plaintiff's … fail[ure] to notify the court of an address change … does not amount to excusable neglect.") (citing cases), *report and recommendation adopted by* No. 2:16-CV-143, 2017 WL 4286240 (D. Vt. Sept. 26, 2017); *Am. Arbitration Ass'n, Inc. v. Defonseca*, No. 93-CV-2424, 1997 WL 102495, at *2 (S.D.N.Y. Mar. 6, 1997) (concluding that the defendants had not shown excusable neglect where they "failed to inform the plaintiff or the Court of their new address despite the fact that they were expecting a decision on their motion to dismiss"); *Halpert v. Interstate Comput. Serv., Inc.* (*In re World Wide Gifts, Inc.*), 10 B.R. 761, 764 (Bankr. S.D.N.Y. 1981) (declining to find excusable neglect where the defendant "by his own inadvertence failed to timely contact counsel").

The record indicates that from 2009 to 2017, Alexander successfully attended hundreds of counseling sessions, examinations, doctor's appointments, administrative hearings, and medical evaluations without apparent difficulty. She took care of her mother, including by transporting her to appointments, attended vocational training classes, volunteered at the Salvation Army, and babysat. She completed much of the Social Security Administration's administrative review process without the assistance of counsel and timely prosecuted her case through multiple rounds of administrative and judicial review. Prior to and throughout these proceedings, Alexander has demonstrated that she is capable of managing her own affairs and meeting deadlines. This history suggests that Alexander's disabilities did not prevent her from pursuing this litigation in a timely fashion. *Cf. Whitman v. SSA*, No. 3:01-CV-1569, 2007 WL 781370, at *2 (D. Conn. Mar. 8, 2007) (rejecting a claim of excusable neglect where the plaintiff "actively litigated her case before this court during the period that she now claims she was 'too ill'").

Moreover, Alexander has not described how her diagnosed mental illnesses frustrated her prosecution of this case. Two psychiatric evaluations of Alexander contained in the record concluded that Alexander suffers from post-traumatic stress disorder, bipolar disorder, and opioid use disorder, but Alexander does not explain how these conditions caused her failure to take a timely appeal of the district court's decision. Nor is any such explanation obvious given Alexander's prior diligence in prosecuting her case and the conclusions of both evaluations that Alexander's attention, concentration, and memory are only "mildly impaired" and that she exhibits "fair" insight and judgment. R. 255-56, 909-10. Indeed, Alexander's disabilities were apparently not so debilitating as to

prevent her from contacting her attorney of her own volition to inquire into the status of her case; had she exercised slightly more diligence in doing so, she would not have missed the deadline to appeal.

The district court thus had sufficient grounds for finding that Alexander's delay was occasioned by her neglect of her case rather than her disabilities. And because the district court had grounds for finding that the "reason for [Alexander's] delay" was "within the reasonable control of the movant," *Pioneer*, 507 U.S. at 395, the district court's conclusion that Alexander failed to meet the "rigorous requirements of Rule 4(a)(5)," *In re Enron*, 708 F.3d at 338, was not an abuse of discretion. While we are sympathetic to Alexander's case, we do not have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *Silivanch*, 333 F.3d at 362.

**B**

We are not persuaded by Alexander's arguments to the contrary. Alexander argues that because the Supreme Court held in *Bowen v. City of New York*, 476 U.S. 467 (1986), that the sixty-day deadline for a Social Security benefits claimant to seek judicial review of the Commissioner's decision under 42 U.S.C. § 405(g) is subject to equitable tolling, the same rule should apply to the deadline to appeal from the district court's decision under Federal Rule of Appellate Procedure 4(a). But the excusable neglect inquiry is already "at bottom an equitable one," *Pioneer*, 507 U.S. at 395, and "the equities will rarely if ever favor a party who," like Alexander, "fail[ed] to follow the clear dictates of a court rule," *Silivanch*, 333 F.3d at 366; *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("[T]he

22

principles of equitable tolling … do not extend to … a garden variety claim of excusable neglect."). Thus, the principles of equitable tolling—even if applied to Alexander's case—would not require a different conclusion from that reached by the district court.

Alexander next points to a line of cases following our decision in *Canales v. Sullivan*, 936 F.2d 755 (2d Cir. 1991), in which we held that "equitable tolling of the 60-day statute of limitations of Section 405(g) may be warranted in cases where an SSI disability claimant fails to seek judicial review in a timely manner because of mental impairment." *Id.* at 759. We went on to hold that "[w]here a claimant avers incapacity due to mental impairment during the 60-day period, the district court should permit the claimant to present evidence in support of this claim" and "determine whether, considering all of the circumstances of the case, equitable tolling is warranted." *Id.* at 759. Alexander argues that *Canales* and its progeny warrant reversal because Alexander attributed her failure to meet the appeal deadline to her "severe mental illness" and the district court "erred in not considering and weighing the effect of Ms. Alexander's profound mental illness in determining that she did not have excusable neglect for filing her Motion for an Extension of Time (and Notice of Appeal) two days late." Appellant's Br. 32-34.

But unlike the claimant in *Canales*, who "aver[red] that mental impairment prevented her from comprehending her right to judicial review," 936 F.2d at 759, Alexander understood her right to judicial review and received judicial review of her claim. An evidentiary hearing of the kind ordered in *Canales* would be unlikely to uncover

information that the district court could not have considered when it ruled on Alexander's motion for an extension.[8]

Bowen and Canales also differ from this case for a more fundamental reason: "the time limit prescribed by Fed. R. App. P. 4(a) is 'mandatory and jurisdictional,'" *Siemon v. Emigrant Savs. Bank (In re Siemon)*, 421 F.3d 167, 169 (2d Cir. 2005), while "the 60-day requirement [to file a civil action under Section 405(g)] is not jurisdictional, but rather constitutes a period of limitations," *Bowen*, 476 U.S. at 478. That distinction makes a difference. "Much more than legal niceties are at stake here" because "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101 (1999); *see id.* at 94-95 ("The requirement that jurisdiction be established as a threshold matter … is 'inflexible and without exception.'"); *id.* at 101-02 ("For a court to pronounce upon the meaning or constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.").

Thus, while we have said that "equitable tolling of the limitations period found in Section 405(g) is not infrequently appropriate, as Congress intended to be 'unusually protective' of claimants in this area," *Canales*, 936 F.2d at 758 (alteration omitted), we have taken the opposite approach with respect to the Rule 4(a) deadline, noting that the "time requirements for invoking appellate jurisdiction are strictly enforced," *Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 96 (2d Cir. 2017). Because Rule 4(a) imposes a jurisdictional

---

[8] Notably, Alexander does not allege that her mental condition changed in the period following the submission of her motion for a judgment on the pleadings.

bar to the exercise of the judicial power, we have recognized that "[t]he power of the federal courts to extend the time limits on the invocation of appellate jurisdiction is severely circumscribed." *Goode*, 252 F.3d at 245. We decline to extend the approach taken in *Bowen* and *Canales*—which involved a non-jurisdictional period of limitations in a statute that is "'unusually protective' of claimants," *Bowen*, 476 U.S. at 480—to this case, which concerns a jurisdictional limitation that applies across-the-board to all litigants.

The appeal deadline also differs significantly from the sixty-day limitations period contained in Section 405(g) because it implicates the finality of judgments. The relief Alexander seeks here would open a district court's final judgment to review after the deadline to appeal from that judgment has passed. Such relief is rarely granted because "to interfere with the finality of a judgment would mean that … a prevailing litigant would be deprived of any certainty that its judgment was no longer subject to appeal," which would "subvert the 'certainty and stability [that] have … been considered of first importance in the appellate practice of federal courts.'" *Mendes Junior Int'l Co. v. Banco de Brasil, S.A.*, 215 F.3d 306, 314 (2d Cir. 2000) (quoting *Hill v. Hawes*, 320 U.S. 520, 524 (1944) (Stone, C.J., dissenting)). While a forgiving approach to the Section 405(g) deadline may be appropriate, "an appreciation for 'the sanctity of final judgments in our federal judicial system' and the public policy 'dictating there be an end of litigation; that those who have contested an issue shall be bound by the results of the contest, and that matters once tried shall be considered forever settled as between the parties" supports our decision to "take[] a 'hard line' when determining whether neglect is excusable under Rule 4(a)(5)." *In re WorldCom*, 708 F.3d at 337-38 (internal quotation marks omitted).

25

Finally, Alexander argues that the district court erred "as a matter of equity because it twice granted the Commissioner an extension to file his brief … without *any* showing of excusable neglect." Appellant's Br. 36. As recounted above, the Commissioner twice moved the district court for extensions of the deadline for filing the Commissioner's cross-motion for judgment on the pleadings. The first extension was requested more than three weeks after the motion was due. The only excuse offered for the failure to meet the deadline was that the Commissioner's counsel had "miscalculated the due date of her response" and therefore "missed this deadline." Special App'x 12. Alexander's counsel consented to the Commissioner's request for an extension, which the district court granted without providing any analysis. The Commissioner then asked for a second extension on the new date that its motion was due. The Commissioner's counsel explained that a further extension was needed because "she was unable to finalize her brief in time" due to her "heavy workload." *Id.* at 14. The district court again granted the request without providing any explanation for its decision.

These excuses would not constitute "excusable neglect" under Federal Rule of Appellate Procedure 4(a)(5). *See In re Enron Corp.*, 419 F.3d at 126 ("[I]nadverence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect. Similarly, preoccupation or an excessive work load does not typically render a mistake excusable.") (citing *Pioneer*, 507 U.S. at 392, 398). Nor would such excuses constitute "good cause" under Rule 4(a)(5) because the Commissioner's failure to meet the deadlines was not "occasioned by something that [was] not within the control of the movant." Fed. R. App. P. 4(a)(5) Advisory Committee's Notes to 2002 Amendments. And it was remarkably uncharitable, to say the least,

26

for the Commissioner's counsel to oppose Alexander's motion for an extension after twice seeking an extension herself.

None of that, however, makes the district court's denial of Alexander's motion an abuse of discretion. The Commissioner's motions for an extension of time before the district court were not subject to "the rigorous requirements of Rule 4(a)(5)." *In re WorldCom*, 708 F.3d at 338. Rather, those motions were governed by Federal Rule of Civil Procedure 6(b)(1), which applies when a litigant fails to comply with a court-imposed deadline. Admittedly, Federal Rule of Civil Procedure 6(b)(1) uses similar language to Federal Rule of Appellate Procedure 4(a)(5), requiring a finding of "good cause" when a litigant seeks an extension before a deadline has passed and a finding of both "good cause" and "excusable neglect" when a litigant seeks an extension after a deadline has passed. *See* Fed. R. Civ. P. 6(b)(1)(A)-(B). Yet the standard for evaluating claims under Federal Rule of Civil Procedure 6(b)(1) differs markedly from those for Federal Rule of Appellate Procedure 4(a)(5).

Unlike Federal Rule of Appellate Procedure 4(a)(5), "Federal Rule of Civil Procedure '6(b)(1) gives the [district] court *wide discretion* to grant a request for additional time.'" *Ramashwar v. City of New York*, 231 F. App'x 26, 27-28 (2d Cir. 2007) (emphasis added). Accordingly, "an application for extension of time under Rule 6(b)(1)(A) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1165 (4th ed. 2021 update); *see also Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296 (2d Cir. 1966) (noting that when Federal Rule of Civil Procedure 6(b) was amended to provide district courts with greater "flexibility," it

27

was "assumed that discretionary extensions would be liberally granted"). We have accordingly said that "mere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect' justifying relief under Rule 6(b)(1)(B)," *Petaway v. Osden*, 827 F. App'x 150, 152 (2d Cir. 2020) (citing *Raymond v. IBM Corp.*, 148 F.3d 63, 66 (2d Cir. 1998)), and have described "good cause" in the context of Rule 6(b)(1) as a "non-rigorous standard," *Manigault v. ABC Inc.*, 796 F. App'x 13, 15 (2d Cir. 2019).

Thus, while the district court's disparate treatment of Alexander's and the Commissioner's motions for an extension might appear inequitable, the disparate treatment was defensible because the motions were subject to different standards. When evaluating the Commissioner's motions under Federal Rule of Civil Procedure 6(b)(1), the district court enjoyed "wide discretion." *Ramashwar*, 231 F. App'x at 27-28. But the district court's power to grant Alexander's motion under Federal Rule of Appellate Procedure 4(a)(5) was "severely circumscribed," *Goode*, 252 F.3d at 245, notwithstanding the fact that the rules use similar language. In light of that profound difference, we cannot say that the district court's failure to treat the Commissioner and Alexander in the same manner with respect to their motions was an abuse of discretion.

## CONCLUSION

We hold that the district court did not abuse its discretion in denying Alexander's motion for an extension under Federal Rule of Appellate Procedure 4(a)(5). Accordingly, the judgment of the district court is **AFFIRMED**.

28